### DALLAS HOTEL CO. v. McCUE.
#### No. 10479.

Court of Civil Appeals of Texas. Dallas.
Jan. 25, 1930.
Rehearing Denied Feb. 22, 1930.

Phillips, Townsend & Phillips and' Tom Scurry, all of Dallas, for appellant.

White & Yarborough, of Dallas, for appellee.

JONES, C. J.

Appellee, Miss Mary McCue, was in the employ of appellant, Dallas Hotel Company, a corporation, as mail clerk. She entered such employment on September 30, 1925, and was discharged on the first day of November, 1927. Appellee filed suit in a district court of Dallas county for damages for the breach of the contract of employment, which was alleged to be for one year from the first day of October, 1927, placing her damages at $85 per month for the time from the first day of November, 1927, to the 31st day of October, of the following year. Appellee also sought to recover exemplary damages in the sum of $25,000, basing such claim on the conduct of the manager of the hotel at the time she was discharged, alleging that, without any cause for doing so, such manager unlawfully took hold of her arm with a great deal of force and shoved her out of the room in which she was working. By trial amendment appellee alleged an employment from month to month at the rate of $85 per month, and sought to recover such sum as actual damages for the month of November, 1927. The trial was to a jury, submitted on special issues, and judgment rendered on the findings of the jury for $85 as actual damages, and $750 as exemplary damages. The verdict of the jury allowed $1,500 as exemplary damages, but the trial court required a remittitur of $750 as a condition of entering judgment in favor of appellee, and such remittitur was filed and judgment rendered. From such judgment appellant has duly appealed.

Appellant's appeal, as shown by its assignments of error, is based on the theory that the court should have given its requested peremptory instruction, on the ground that the evidence conclusively showed that appellee's employment was not for any definite length of time, but could be terminated at the will of either party, and that the case should be reversed and rendered in its favor. This theory is presented to this court upon proper assignments of error. Appellant also contends that, if it be mistaken in its right to have the case reversed and rendered, then it should be reversed and remanded because of errors of the trial court in the admission of evidence offered by appellee. This contention is presented to this court by proper assignments of error. The following is a sufficient statement of the facts:

Appellee's suit, as shown by her pleadings, is based solely on a breach of an alleged contract of employment, and for exemplary damages, on the ground that the discharge was malicious, as shown by the alleged conduct of appellant's manager at the time of the discharge. No recovery for actual damages for the alleged assault committed on appellee is sought. Appellee's evidence discloses, in effect, that at the time she entered such employment, about noon of the 30th day of September, she called on a Mr. Schubert, an assistant manager of the hotel, and told him she was informed that there was a vacancy in the position of assistant mailing clerk, and that she desired to apply for such position; that Schubert said, yes, and wanted to know when she could go to work, and she informed him, at once; that she was told to go

with him and he would make her acquainted with the other girls in such department, and that they would instruct her in the duties of the position; that the pay would be small in the beginning, but that if she did the work properly she would be raised soon; that she was paid semimonthly at the rate of $75 per month while she was assistant mail clerk; that about three weeks after she entered such employment she was promoted to the position of mail clerk, and from then on until the time of her discharge she received $85 per month, paid semimonthly; that when she received her first increase in pay she went to Mr. Schubert and thanked him for such increase, and he replied that he was glad to do it and was sorry it could not be more.

Appellee, when recalled, testified: "I started to work there at $75.00 a month and I should judge I drew $75.00 a month about three weeks. After that I drew $85.00 a month. I had been employed by them at that at the time I was discharged two years, one month and one hour." She does not testify that this salary was discussed at the time she was employed.

Mr. Schubert does not remember what conversation was had between them at the time appellee was employed. In this state of the record, we find the contract of employment to have been as testified to by appellee. Appellant's comptroller testified that, all employees of the hotel were paid semimonthly.

As to what happened at the time of appellee's discharge, the evidence is in sharp conflict between appellee, the said manager, and the said assistant manager. Appellee's testimony is to the effect that, when telegrams or other communications to the hotel for its guests were received, it was her duty as mail clerk to take the telegrams for the guests and hold them, unless a guest should telephone down from his room to have the telegram sent up, or if a guest of the hotel should telephone or wire her to forward his telegram, then it would be forwarded to him; that Mr. Ellifritz was the manager of the hotel and had general supervision of the entire hotel during the time she worked there, and that Mr. Schubert was assistant manager and second in authority to Mr. Ellifritz; that on such morning, when she went into the mail room to go to work, she saw a telegram lying on the desk; that Mr. Charninski, appellant's credit manager, came in after she had been at work a short time and said that he had opened a guest's telegram and that he wanted her to go to the Western Union Telegraph office and get a new envelope and put the telegram in the new envelope; that she replied that he had no right to open a guest's telegram; that Charninski then told her that the reason he had opened this telegram was that the guest had told him or given him permission to do so, and told appellee that she must do

as she was told, to which she replied that she would not tamper with any mail or telegrams; that Mr. Charninski said that he would show her, and that she would have to do as he said; that a short time thereafter, Mr. Ellifritz came in with Mr. Schubert, and the former directed her to go over to the Western Union Telegraph office and get a new envelope, put the telegram in it, seal it up, and then apologize to Mr. Charninski; that to this demand appellee replied that she would not tamper with mail for the guests, for the reason it was not right from a sense of justice; that Mr. Ellifritz told her, "Do as I tell you or get out," and to this she made the same reply as before; that, after she had thus refused, Ellifritz grabbed her by the arm and shoved her, leaving scratches on her arm; that "he throwed me out of the room just as roughly as he could, and told me to get out and not come back"; that he left his finger marks on her arm, the marks being blue. After locating the mailing room and showing its connection with the lobby, where guests always assembled, and stating that there were a great many guests in the lobby at the time, appellee then stated that when Ellifritz took hold of her arm and shoved her he talked very loud; that at such time she was in a position for the guests to have seen her and to have heard what Mr. Ellifritz was saying, because he talked very loud; that she estimated that she was shoved about six feet after Mr. Ellifritz had taken hold of her; that after she had been shoved out of the mailing room she was made very nervous, was very much excited, and "trembled like a leaf"; that she cried, could not have walked out of the lobby because she was so weak, was scared, humiliated, and would never forget such treatment; that after she was discharged she stayed in the mailing room about 40 minutes and then went home, threw herself on the bed, and cried; that she had not been able to get employment since that time; that she was up and down following her discharge for over a week; that "it just crushed me, it just killed me"; that this condition was brought about by the act and conduct of Mr. Ellifritz on the occasion of her discharge; that her mouth broke out on the inside and this was caused by her system being poisoned; that she was in perfect health before her discharge, and had never had any trouble before with her nerves or her nervous system; that Mr. Charninski was considered the credit manager of appellant, but that he had nothing to do with her; that she was working under strict orders to be very careful with the mail and telegrams that came for guests, and not to give mail even of a husband to a wife, or of a wife to a husband; that she had not received any money for the work she had done on the day she was discharged, and that her last pay day was the day previous to this discharge.

Ellifritz testified, to the effect, that he was the manager and director of appellant's hotel; that Charninski was the credit manager of the hotel and had authority over Miss McCue, he being her superior; that on the occasion in question he had a conversation with Charninski before he talked to appellee; that Charninski reported that appellee had refused to carry out an order of his in the line of his work at the hotel and appealed to him to see that she carried out such order; that after this conversation he went with Mr. Schubert to see appellee and told her, "You will have to put that telegram in an envelope as directed by Mr. Charninski, and then tell Mr. Charninski that you will obey him, or you will have to quit"; that she replied that she would quit, and that he and Mr. Schubert then walked out of the office; that he did not touch appellee while in the mail room.

The testimony of Schubert as to what took place between appellee and Ellifritz in the mailing room is substantially the same as given by Ellifritz. Mr. Charninski testified that he was only a few feet away from where the conversation between Ellifritz and appellee was being had, and that it was in such a low voice that he was unable to hear what was said. This witness explained that he was directed by the guest to open the telegram in question, and explained his reason for sealing it in a new envelope in a manner that did not reflect on him.

The case was submitted to the jury on issues requested by appellee, and on these issues the jury returned the following findings: (1) Appellee's employment was from month to month; (2) appellant did not have good cause for the discharge of appellee; (3) at the time of the discharge appellee suffered pain and humiliation; (4) that appellee had been damaged by her discharge, without good cause, in the sum of $85; (5) that appellee is entitled to recover, as exemplary damages for her wrongful discharge, the sum of $1,500; (6) that appellee, after her discharge, used reasonable diligence to secure employment during the month of November, 1927. In connection with special issue No. 4, the court instructed the jury that they might take into consideration what plaintiff would have earned under her contract of employment for the month of November, less any amount that she had earned during said time. In connection with special issue No. 5, the court instructed the jury that by the term "exemplary damages" is meant damages by way of punishment for the intentional doing of a wrongful act without legal right.

The first question to determine on this appeal is, whether the finding of the jury on special issue No. 1, that appellee's hiring was from month to month, is supported by evidence; or to state it differently, does the evidence show, as a matter of law, that appellee's hiring was indefinite as to the time or term of employment, and hence, a hiring at the will of either party? East Line & R. R. Ry. Co. v. Scott, 72 Tex. 70, 10 S. W. 99, 13 Am. St. Rep. 758.

The presumption, in the United States, in case of an indefinite hiring, is that it is a hiring at will, and if an employee seeks to make out a hiring for a definite period of time he assumes the burden of establishing that such was the intention of the parties at the time the contract was made. While the decisions are in considerable confusion in the different states as to a contract of hiring, not specifically naming the time of its duration, the decisions of our state, we believe, have uniformly held that when one is employed to work at so much per year, month, or week, the agreement imports a contract of hiring for the period of time mentioned in respect to the measure of time for the payment of the wages to be received. Young v. Lewis, 9 Tex. 73; San Antonio & A. P. Railway Co. v. Sale (Tex. Civ. App.) 31 S. W. 325; Dodson-Braun Mfg. Co. v. Dix (Tex. Civ. App.) 76 S. W. 451; Crater Oil Co. v. Voorhies (Tex. Civ. App.) 280 S. W. 849; Accidental Oil Mills v. Tomlinson (Tex. Civ. App.) 8 S.W.(2d) 558, 559.

In the instant case, however, when the contract of employment was entered into, there was no unit of time mentioned as a measure of the wages to be received, and, in fact, no sum named as to what the wages would be. It is true that appellee testified that she was employed at $85 per month, but it is not clear, in the light of her other evidence, whether this was the result of a later agreement or whether it was merely a conclusion of hers, based on the fact that she received such wages, payable semimonthly, after she had gone to work under her employment contract. In her testimony, detailing what was said between her and appellant's representative at the time she was employed, she does not mention that such statement was made to her at such time. It therefore became a jury issue as to whether she was employed at $85 per month.

If we accept appellant's theory that this evidence does not raise the issue of a new agreement, then we must place the most favorable construction that her testimony, that she was employed at a salary of $85 a month, will warrant, which is that she placed such construction on the contract and that her employer acquiesced in such construction, and we will discuss the case from this viewpoint.

In determining the duration of the employment under a contract whereby a person is hired or employed without any specific agreement as to the period of service or employment, regard must be had to the

circumstances of each particular case. The contract as to the period of service, when such period is not definitely expressed, may be controlled by custom, by the nature of the employment or service, by the construction in this respect the parties placed on the contract, or even by the manner, in respect to time, in which payment of wages or salary is made. 8 Ann. Cas. 280, and cases cited in notes.

This record establishes the fact that appellee and the other employees of appellant were paid semimonthly, that is, on the 15th and last day of each month. Appellee's testimony above discussed is susceptible to the conclusion that while appellant paid its employees semimonthly, it recognized that the unit for payment was a month.

At the time this contract was entered into, if appellant's representative had specified that appellee would be employed at $75 per month, payable semimonthly, then there could be no question that, under the rule obtaining in this state, as shown by the authorities heretofore cited, appellee's employment would have been from month to month. Such a construction proceeds under the theory that, as the parties made a month the unit for payment of wages, they thereby manifested their intention that such unit was to be the duration of employment. This rule of construction of employment contracts, in which no time of the duration of employment is specifically named in the contract, but in which the time of paying wages is named, has become the settled rule of interpretation of such contracts in our jurisprudence. Can such rule be applied under the facts of this case, the time of payment itself not being specifically named when the contract was entered into?

■■ The courts cannot make, by construction, a contract that the parties thereto did not expressly or impliedly make. The function of the courts is only to determine the intention of the parties at the time the contract was entered into, and can only make definite those parts of the contract left indefinite by the parties, and then only when such intention either can be determined by the language of the contract, or if the language used is vague and indefinite, or even silent, as to any of its terms, then to determine whether from the facts and circumstances surrounding the contract the parties manifested a definite intention in reference to such part of the contract. We have seen that, under the interpretation the parties placed on this contract, wages to be paid appellee were measured by the month. The intention of the parties being that appellee's

wages as mail clerk should be $85 a month, we see no reason why the rule adopting the unit of time for the payment of wages as the unit of time of employment should not be adopted as the rule in this case. For these reasons, we believe the evidence, even from appellant's construction of its meaning, raised an issue of fact as to whether appellee's employment was from month to month, that the court did not err in submitting such issues to the jury, and that the finding of the jury in this respect is supported by evidence. All assignments of error in this respect are overruled.

■ Over a timely and proper objection by appellant, appellee was permitted to testify that three or four days after her discharge her mouth broke out and the doctors that examined her said she had been scared; that her mouth broke out all on the inside and that it was because her system had been poisoned. This evidence as to what her physicians said, and appellee's conclusion as to the cause of the soreness in her mouth, should not have been admitted. It is in part hearsay, and in part an opinion of a nonexpert witness in reference to a matter about which such a witness cannot give a conclusion. Such evidence being on a material issue, the overruling of the objection is reversible error. Rogers v. Crain, 30 Tex. 284; International & G. N. Railway Co. v. Kuehn, 11 Tex. Civ. App. 21, 31 S. W. 322; Wells Fargo v. Boyle, 39 Tex. Civ. App. 365, 87 S. W. 164; American Nat'l Insurance Co. v. Hicks (Tex. Civ. App.) 198 S. W. 616.

■ Two bills of exceptions are reserved to certain evidence given by a Mrs. Marsh, a witness for appellee. Over the objection of appellant, that it was hearsay, this witness was permitted to testify that, on the day following the discharge, appellee stated to witness that she (appellee) was brought home in a state of collapse. This cannot be taken out of the rule of hearsay evidence on the ground that it was a res gestæ statement, for a day had intervened from the date of the occurrence. The other bill of exception relates to the same witness being permitted to testify, over appellant's objection, that appellee said she felt like she had been disgraced because she had been discharged. This was a self-serving declaration and not admissible. There are other assignments of error which we have examined and overruled, because, in our opinion, they are either without merit, or the matter complained of will hardly occur at another trial.

Because of the errors above pointed out, this case must be reversed and remanded.

Reversed and remanded.