## BANKERS' NAT. LIFE INS. CO. v. FIRST NAT. BANK OF GROVETON.

### No. 2520.

Court of Civil Appeals of Texas. Beaumont.
Nov. 30, 1934.

Rehearing Denied Dec. 26, 1934.

Kemper, Hicks, & Cramer, of Houston, for appellant.

C. H. Crow of Groveton, Max M. Rogers, of Huntsville, and M. L. Bennett, of Normangee, for appellee.

WALKER, Chief Justice.

On the 3d day of March, 1933, in district court of Trinity county on trial to the court without a jury, appellee, the First National Bank of Groveton, recovered judgment against appellant, Bankers' National Life Insurance Company, for the principal sum of $2,000, with 12 per cent. damages and $500 attorney's fees, with interest at the rate of 6 per cent. per annum from the date of judgment. The judgment was rendered in appellee's favor upon an insurance policy in the sum of $2,000 issued by appellant to Winston Dial on the 15th day of December, 1931. The insured died December 26, 1931. The beneficiaries of the policy were named, and described therein as follows:

"The Company will pay to the Irrevocable Creditor Beneficiary named in Paragraph 1 an amount equal to the indebtedness of the Insured to such named Creditor Beneficiary at the time of the death of Insured, and to the Second Beneficiary any amount in excess of such indebtedness. * * *

"First Irrevocable Beneficiary: First Natl. Bank—Groveton (Name of Bank).

"Second Beneficiary to be Executors, Administrators or Assigns: Estate. (If Executors, etc., not desired designated, cross out and name preference)."

The appeal was regularly prosecuted to the Galveston Court of Civil Appeals, transferred to this court by orders of the Supreme Court.

Appellant presents the following points for reversal: First. In his application for the insurance, Winston Dial, the insured, made the declaration: "I have not received medical or

surgical attention during the past six months." This statement was untrue. Appellant's point is that this statement was in legal effect a warranty and, being false, absolutely voided the policy. Second. The court received in evidence a copy of the certificate of Dr. C. McCasland, filed with the county clerk of Trinity county, to the effect that Winston Dial was free of all venereal diseases, as a basis for the issuance to him of a marriage license. (a) Appellant makes the point that this testimony was subject to its objection "as being hearsay." (b) It is further contended that the court erred in striking down interrogatory No. 27 and the answer thereto, propounded by appellant to its witness Carl W. Huber. Third. The judgment for attorney's fees was excepted to upon the ground that it was without support. Fourth. Appellant complains of the overruling of its plea in abatement, filed in due order of pleading, to the effect that the estate of Winston Dial was a necessary party; and in refusing to declare a mistrial and to continue the case upon appellant's motion, when it discovered upon the trial that Winston Dial left surviving him minor children who were in no way parties to this litigation.

### Opinion.

■ It is our conclusion that the statement made by Winston Dial in his application, complained of by appellant under the first proposition, was a mere representation and not a warranty. On the issues raised by this statement, the trial court found: "The statement contained in the application made by the said Winston Dial, 'that I have not received medical or surgical attention during the past six months' was untrue, but was not fraudulently made and was not material to the risk, and did not actually contribute to the contingency or event on which said policy became due and payable, with the death of said Winston Dial."

The trial court filed the following conclusions of fact on the issues raised by this statement of Winston Dial: " * * * There was no evidence adduced upon the trial hereof tending to show that Winston Dial, the insured, had ever had any heart, lung, or kidney trouble, paralysis or cancer. The evidence was also undisputed that the said Winston Dial was in sound health at the date of making the application and the date of the issuance of the policy, and that during the sixty days immediately prior thereto, he had been able to perform all of the duties of his occupation, and that during said period of time, he was a strong, healthy, able bodied man."

In paragraph 12 of his findings of fact, the court said: "During the period of time between August 25th, 1931, to September 20th, 1931, the said Winston Dial came from his home in Polk County to the office of Dr. C. McCasland in the City of Groveton, Trinity County, Texas, on six occasions for treatment by Dr. McCasland for what Dr. McCasland termed as inflammatory rheumatism in his left hand and arm, and the fingers on said hand were swollen and painful to the touch; that said Winston Dial on September 20th, 1931, was completely cured of said inflammatory rheumatism and was by Dr. McCasland on said date last mentioned, discharged as completely cured, and thereafter the said Winston Dial had no recurrence of such ailment or any symptom thereof, and had no other ailment of any kind until on the 19th day of December, A. D. 1931; on said 19th day of December, 1931, the said Winston Dial received a barbed wire scratch, cut or puncture on the right leg about the knee, which several days later developed into blood-poisoning and from which he died on December 26th, 1931."

In paragraph 13 of his findings of fact, the trial court found: "There was no connection between the rheumatic condition for which the deceased was treated, between August 25th, 1931, and September 20th, 1931, and the blood-poisoning from which he died on said 26th day of December, 1931, and said blood-poisoning was neither caused nor aggravated by said rheumatic condition." ·

The court also found: "The false statement in the application made by the said Winston Dial, to the effect that the said Winston Dial had not received medical or surgical attention during the six months immediately preceding the application and issuance of the policy, being a misrepresentation about an immaterial fact and not fraudulently made, was a representation and not a warranty."

The evidence fully supported the trial court's conclusions of fact. Not only was there no evidence that the illness of Winston Dial, for which Dr. McCasland treated him between August 21 and September 20, 1931, which was the matter misrepresented by deceased, contributed to his death and the consequent maturity of the policy, but the uncontradicted testimony of Dr. McCasland was to the effect that Winston Dial had fully recovered from the illness for which he was treated on September 20, 1931; and that in October, 1931, this witness examined Winston Dial again, this time for a health certificate for marriage, and found that he had recovered from the attack of rheumatism and was

well and strong; this witness saw him again on December 24, 1931, a day or two before his death, and found that he was a well man with the exception of a cut on his knee. Thus the issue was raised that the rheumatic condition of the insured's arm and hand did not reappear but was entirely cured. The testimony of Dr. Thornton, who performed a post mortem on the body of Winston Dial, was to the effect that he died of blood poisoning, resulting from the cut on the knee. This witness testified that he found nothing else the matter with the insured, except the blood poisoning, and that the blood poisoning caused his death. We quote as follows from the testimony of Dr. Thornton:

"Q. Assuming that Mr. Dial had inflammatory rheumatism up until in September, 1931, and that he was pronounced a well man from that rheumatic condition, I will ask you whether or not in your judgment that rheumatic condition would have contributed at that time towards giving Mr. Dial the blood-poisoning from which you say he died? A. It would not."

Dr. McCasland's testimony was also to the effect that Winston Dial died as the result of blood poisoning and that the rheumatic condition in no way contributed to his death.

Article 5043, R. S. 1925, reads as follows: "Any provision in any contract or policy of insurance issued or contracted for in this State, which provides that the answers or statements made in the application for such contract or in the contract of insurance, if untrue or false, shall render the contract or policy void or voidable, shall be of no effect, and shall not constitute any defense to any suit brought upon such contract, unless it be shown upon the trial thereof that the matter or thing misrepresented was material to the risk or actually contributed to the contingency or event on which said policy became due and payable, and whether it was material and so contributed in any case shall be a question of fact to be determined by the court or jury trying such case."

Under this article of the statute, the statement made by the insured and pleaded and relied upon by appellant to render void this insurance policy was not a warranty but a mere representation; so, the mere fact that the statement was false did not void the policy, but under the statute the determinative issue was whether or not the misrepresentation was material to the risk. In support of our conclusion, we quote as follows from American Central Life Ins. Co. v. Alexander (Tex. Com. App.) 56 S.W.(2d) 864, 866:

"Where the insurer, in order to avoid the policy, contends that the insured failed to disclose certain facts deemed material to the risk, the burden rests upon the insurer to allege and prove the facts sustaining this contention. Furthermore, if the evidence raises the question, it becomes an issue of fact to be determined as to whether or not the misrepresentations in the application for insurance, pleaded by the insurer as a defense against liability upon the policy, were material to the risk, or were made with intent to deceive."

In that case the insurance company contended that a false statement made by the insured regarding his use of alcoholic beverages was a warranty and voided the policy. That contention was denied on the proposition just quoted. In Southland Life Ins. Co. v. Norton (Tex. Civ. App.) 297 S.W. 1083, 1086, the insured made the statement in his application that he had suffered from influenza in 1918, and that he had not had any other disease or injury in the last ten years, and that Dr. Collard of Wichita Falls, Tex., was the only doctor who had treated him during that time. It was shown upon the trial that the insured had been treated by several different physicians during the time inquired about and for various other diseases and ailments than the one disclosed by him in his application. In denying the contention of the insurance company that the statements made in the application were warranties, the court said: "It is a settled rule of decision in this state, sustained by the great weight of authority, that the failure of an applicant to disclose previous illness or physical injuries in his application for insurance will not, as a matter of law, be deemed material to the risk unless such illness or injuries was of such a nature as to affect the general health of the applicant and lessen the term of his life expectancy."

Many authorities were cited and reviewed in support of that conclusion. In reversing that case on a different point, the Commission of Appeals, 5 S.W.(2d) 767, affirmed the proposition just quoted; for an additional opinion in this case see (Tex. Civ. App.) 9 S.W.(2d) 752. In Huey v. American National Insurance Co. (Tex. Civ. App.) 45 S.W.(2d) 340, 343, the insured made the statement in his application that he had not been treated by a physician in the preceding seven years; the evidence of an attending physician was that the insured had been treated for a rheumatic condition of the feet during the preceding two years. In holding that the statement made in the application was not a warranty but a mere representation, the court said: " * * * The statement in the application was only a

representation and not a warranty, and a defense based thereon is governed by the provisions of article 5043, R. S., denying to the insurance company such defense unless it be shown 'that the matter or thing misrepresented was material to the risk or actually contributed to the contingency or event on which said policy became due and payable,' a question of fact for the determination of the jury. * * * There is totally lacking any evidence to show that the condition for which Huey was treated two years before contributed in any manner to his injury on April 12, 1929."

That conclusion was affirmed by the Supreme Court (Commission of Appeals), same case, on writ of error, 66 S.W.(2d) 690. In People's Mutual Life Ass'n v. Cavender (Tex. Civ. App.) 46 S.W.(2d) 723, 724, the insured made the statement in his application that he had never undergone a surgical operation; the proof was that about three months before making the application a physician, in order to relieve a sinus trouble and drain the pus, performed an operation upon the insured. The court held that the statement in the application was not material to the risk saying: "The record in this case shows that in January, 1929, Mr. Cavender had sinus trouble and the doctor, in order to relieve the malady and drain the pus, punctured the frontal bone, making a very small hole; that thereafter Mr. Cavender went immediately home and to work on the farm. He returned to the doctor for treatment several times. The jury found that at the time the application was made Cavender had entirely recovered from the sinus trouble, and that it did not in any way contribute to his death. It therefore affirmatively appears that said statement was not in any way material to the risk."

The authorities cited support our conclusion that the false statement made by the insured in his application for this policy was a mere representation and not a warranty, and the facts, as summarized, support the fact conclusions of the trial court that the statement was not fraudulently made by the insured and, though untrue, was not material to the risk and did not contribute to the contingency or event upon which the policy of insurance became due and payable.

The authorities do not support appellant's contention that since Winston Dial must have known the falsity of his statement, it constituted a fraud in law against appellant and was thereby converted into a warranty. In the Alexander Case, supra, the court said: "If it is determined that the misrepresentations made by the insured do not relate to a matter or thing material to the risk, or which contributed to the maturity of the policy, the question of intent of the insured in making them is immaterial."

It follows that the policy of insurance constituted a valid obligation against appellant.

■ Second. Over the objection of appellant that it was hearsay, the trial court received in evidence the following certificate, referred to in appellant's second point, made by Dr. C. McCasland, and filed with the county clerk of Trinity county as a basis for the issuance of a marriage license to the insured:

"Groveton, Texas, October 15, 1931.

"I have this day examined Mr. A. W. Dial of Groveton, Trinity County, Texas, and I find him free from all venereal diseases.

"[Signed] C. McCasland, M. D."

This ruling of the court constituted reversible error. Mutual Life & Loan Ass'n of America v. Skidmore et al. (Tex. Civ. App.) 50 S.W.(2d) 384; Holliday Creamery Co. v. Haney (Tex. Civ. App.) 283 S. W. 938; North American Accident Ins. Co. v. Miller (Tex. Civ. App.) 193 S. W. 750; Dallas Hotel Co. v. McCue (Tex. Civ. App.) 25 S.W.(2d) 902; Vicksburg & Meridian R. Co. v. O'Brien, 119 U. S. 101, 7 S. Ct. 172, 30 L. Ed. 299; Williams v. Mutual Motor Co. (Tex. Civ. App.) 67 S.W. (2d) 905; United States Fidelity & Guaranty Co. v. Inman (Tex. Civ. App.) 65 S.W.(2d) 339.

Though this case was tried to the court without a jury, the reception of this evidence was not harmless error; the conclusions of fact filed by the court make it clear that the judge did not disregard this evidence, but in part based his judgment thereon. On this proposition, in Southern Surety Co. v. Nalle & Co., 242 S. W. 197, 202, the Commission of Appeals said:

"It affirmatively appears in the record in this case that the trial judge considered the evidence of the declarations of the agent, Coleman, in making his findings of fact as a basis for the judgment rendered, and the finding of the Court of Civil Appeals considered above and its affirmance of the case were expressly predicated thereon. Our Supreme Court in discussing when a case may be affirmed under the rule invoked by defendants in error, and when it should be reversed and remanded, notwithstanding such rule in the case of Railway v. Startz, 97 Tex. 167, 171, 77 S. W. 1, 2, said:

" 'The rule of practice assumes that the judge hearing all of the evidence has distinguished between the competent and incompetent, and that, where the former is clearly

sufficient to support the judgment, he acted upon it rather than the latter. But in this case the hearsay evidence furnishes the only definite basis in the record for a judgment, and as the trial judge ruled that it was admissible, we do not think it 'a fair presumption that he disregarded it and based his judgment upon such uncertain evidence as otherwise appears.'

· "In view of the fact that the trial court considered such incompetent evidence in making his findings in the case, instead of recommending that the cause be reversed and remanded to the Court of Civil Appeals for that court to pass upon the sufficiency of any other evidence in the record to sustain the judgment, we shall recommend that the cause be reversed and remanded to the district court for a new trial."

■ The witness Carl W. Huber, referred to under point b of appellant's second point, supra, was a resident citizen of Jersey City, N. J., and was appellant's chief underwriter. His depositions were taken by appellant to establish the circumstances under which the Winston Dial policy was issued, and that the .false statement made by him in his application was material to the risk. After answering the questions generally propounded to this witness, the following question was asked him and he answered as indicated:

"No. 27. Please state any other fact or facts within your knowledge of interest to either party to this suit as fully and minutely as if specifically interrogated thereon? A. I did not approve or disapprove the application for insurance upon the life of Winston Dial. Investigation was instituted to determine the insurability of Dial from a moral and financial standpoint. Before this was completed, Dial was dead. With the facts subsequently learned relative to his previous health and medical treatment, I would have rejected the application and called for cancellation of the policy due to misrepresentations."

The court sustained against this question and answer appellee's objection that it "was vague and indefinite." As part of the bill of exception, the trial court certified to the following facts: "That said Direct Interrogatory No. 27 and the answer thereto had been on file more than one day before the trial; that the entire deposition of the witness Carl W. Huber, from which said direct interrogatory and answer was offered, had been on file in this cause for more than one day before trial; that no written objection to said Direct Interrogatory No. 27 or its answer had been filed; that no written objection whatever had been filed to said deposition or any interrogatory or answer therein, and that objection by plaintiff to Direct Interrogatory No. 27 and the answer thereto was made for the first time when offered in evidence at the time and in the manner hereinbefore recited."

On authority of Gulf, C. & S. Ry. Co. v. Richards, 83 Tex. 203, 18 S. W. 611, and Wade v. Love, 69 Tex. 522, 7 S. W. 225, this ruling of the court was reversible error.

Third. Appellee concedes that the contention made under appellant's third point, supra, must be sustained, that is, that the judgment for attorney's fees was without support in the evidence.

Fourth. As the judgment of the lower court must be reversed and the cause remanded for a new trial for the errors discussed above, we pretermit a discussion of the assignments relating to the overruling of the plea in abatement. These issues can be obviated upon another trial.

It follows that the judgment of the lower court should be reversed and the cause remanded for a new trial.

Reversed and remanded.