**ETL CORPORATION, Appellant,**

v.

**Gene FORRESTER, et al., Appellee.**

**No. 05–82–01245–CV.**

Court of Appeals of Texas, Dallas.

Jan. 13, 1984.

Thomas A. Albright, Jenkins & Gilchrist, Dallas, for appellant.

Winford L. Dunn, Texarkana, for appellee.

Before AKIN, ROWE and STEWART, JJ.

STEWART, Justice.

ETL Corporation appeals a directed verdict in favor of Gene Forrester, appellee, in a suit to collect payment on a check for $25,000 which was written as an escrow deposit pursuant to a contract for the sale of real estate between ETL, seller, and the Power for Good Foundation (PFG), purchaser. In three points of error, ETL contends that the trial court erred in directing a verdict for Forrester and in ruling that ETL's inability to transfer mineral rights constituted a failure to perform a condition precedent under the sales agreement. We agree and, for the reasons following, reverse and remand for a new trial.

In 1978, ETL purchased Marker Tree Lodge without the mineral rights, but, otherwise, with no defects in the title. About July 1, 1979, ETL entered into an agreement to sell the lodge to PFG. Pursuant to the provision of the Agreement of Sale requiring an escrow deposit, Forrester, PFG's chief financial officer, director and Trustee Board member, delivered his personal check in the amount of $25,000 made payable to ETL. On the front of the check were the words, "See Stipulation on Reverse." The reverse side of the check bore the following language: "This check is not to be rendered payable before close of escrow number # __ on or before September 1, 1979." Between July 1 and September 1, 1979, ETL kept the lodge off the market and timely delivered a title report, which showed that ETL did not own the mineral rights. PFG did not respond in writing to the information in the title report, as required by a provision in the contract of sale.

On September 1, 1979, the sale did not close because PFG did not have sufficient funds. ETL was prepared to close on that date and considered the $25,000 check as an escrow deposit to be forfeited. When ETL attempted to cash the check, it was returned, marked "INSUFFICIENT FUNDS." When payment was not forthcoming, ETL sued on the check as an independent contract between ETL and Forrester. At the close of ETL's case, the trial court withdrew the case from the jury and directed a verdict in Forrester's favor.

In its first point of error, ETL contends that the court erred in directing a verdict for Forrester because none of the elements of ETL's prima facie case and none of Forrester's affirmative defenses were conclusively established by the evidence against ETL. ETL argues that the primary fact issues in this case, the terms of the contract between ETL and Forrester and whether the parties performed their obligations under the contract, and the merits of Forrester's affirmative defenses could only be determined after the terms of the contract were established. Since ETL's suit was for breach of the contract embodied in the check, rather than breach of the agreement of sale, ETL contends that (1)

the contract was unambiguous and, by its terms alone, became due on September 1, 1979, or, alternatively, (2) the contract was ambiguous and the agreement between ETL and PFG was merely one circumstance to be considered in determining the parties' intent behind the ambiguous contract.

 Whether a contract is ambiguous is a question of law for the court. *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex.1980). A written contract is ambiguous only when the application of pertinent rules of interpretation to the face of the instrument indicates genuine uncertainty as to which of two or more meanings is the proper one. *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154, 157 (1951). We agree that the contract embodied in the stipulation on the back of the check is ambiguous because, from a reading of the stipulation, (1) we cannot determine whether the escrow number refers to the agreement between ETL and PFG or another escrow account and (2) we cannot determine whether it was the intent of the parties that the check would become payable on September 1, 1979, regardless of closing, or whether it would become void after September 1, 1979, if the parties did not close for any reason.

Furthermore, it is apparent from the record that the trial court found the stipulation on the check to be ambiguous. He admitted parol evidence to establish that the "escrow No. ____" on the check referred to the escrow account established pursuant to the agreement between ETL and PFG rather than to another escrow agreement. He further admitted parol evidence regarding the intent of the parties in relation to the check and regarding the terms of the underlying agreement between ETL and PFG. Thus, ETL was entitled to jury findings on the questions of fact raised by the evidence. *Amistad, Inc. v. Frates Communities, Inc.*, 611 S.W.2d 121, 127 (Tex.Civ.App.—Waco 1980, writ ref'd n.r.e.). We sustain point of error number one.

The stated reason for the court's directed verdict· was that, as a matter of law, the lack of mineral interests in the property was a failure of title under paragraph 6.03 of the agreement which reads:

> If Seller shall be unable to convey title to the Property or any portion thereof on the Closing Date in accordance with the provisions of this Agreement, (i) Seller shall, on or prior to the Closing Date, give notice of such inability (and the nature thereof) to Purchaser, and (ii) Purchaser may either accept such title as Seller can convey, without reduction in the Purchase Price, or terminate this Agreement, in which event the Escrow Deposit, together with all interest earned thereon and any other sums delivered by Purchaser to the Title Company in connection herewith, shall be forthwith returned to Purchaser.

In its second and third points of error ETL asserts that its inability to transfer mineral rights was a Permitted Exception to title under paragraph 2.01 of the agreement and, thus, it did not fail to perform a condition precedent under the agreement. Paragraph 2.01 states:

> Within thirty (30) days after the date hereof, Seller at Seller's sole cost and expense, shall cause the Title Company to issue to Purchaser a preliminary title report (the "Title Report") accompanied by a copy of all recorded documents relating to easements, rights-of-way, etc., affecting the Property. Purchaser shall give Seller written notice on or before the expiration of ten (10) days after it receives the Title Report that the condition of the title as set forth in the Title Report is or is not satisfactory. In the event Purchaser fails to so notify Seller of any objections to the title to the Property as shown by such Title Report, any and all such objections shall be waived, all matters shown thereon shall be deemed Permitted Exceptions and the Title Report shall be deemed approved by Purchaser for all purposes except as hereinafter otherwise provided. If Purchaser states that the condition of title is

not satisfactory, Seller may, at its sole cost and expense, promptly undertake to eliminate or modify all such unacceptable matters to the reasonable satisfaction of Purchaser.... [I]f Seller is unable to satisfy said objections prior to Closing, Purchaser may, at its option, (i) accept title to the Property subject to the objections raised by Purchaser ... or (ii) rescind this Agreement....

 In order to determine the intent of the parties and the extent to which they intended to be bound, it is the duty of the court to construe a contract as an entire instrument, and to consider each part with every other part so that the effect and meaning of one part on any other part may be determined in such a way that all parts, if possible, are given effect. *City of Midland v. Waller*, 430 S.W.2d 473, 478 (Tex. 1968); *Steeger v. Beard Drilling, Inc.*, 371 S.W.2d 684, 688 (Tex.1963). Construing this agreement as a whole, paragraph 2.01 is properly incorporated in paragraph 6.03 by the phrase, "in accordance with the provisions of this agreement." Paragraph 6.03 covers generally the inability to convey title, while paragraph 2.01 specifies Permitted Exceptions to the title. Paragraph 2.01 requires a title report within thirty (30) days of the execution of the contract, while paragraph 6.03 refers to the status of title on the closing date. We hold that, under paragraph 2.01, by not responding to the information in the title report, PFG approved the title as reported, and the lack of mineral rights became a Permitted Exception to title. Therefore, ETL was able to convey title under Paragraph 6.03 of the agreement, and the trial court erred in directing a verdict on the basis of paragraph 6.03 alone. ETL's second and third points of error are sustained.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.