**Robert W. DECH, III, Appellant,**

v.

**DANIEL, MANN, JOHNSON & MENDENHALL, Appellee.**

**No. 01–86–00419–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

March 17, 1988.

Edward S. Hubbard, Bracewell & Patterson, Clinton P. Hackney, Kennedy, Burleson & Hackney, Houston, for appellant.

Eugene M. Nettles, Houston, for appellee.

Before JACK SMITH, LEVY and HOYT, JJ.

## OPINION

JACK SMITH, Justice.

This is an appeal from the trial court's take-nothing judgment in which the appellant sought damages for the alleged breach of an employment contract by the appellee.

The appellant, Mr. Dech, sought employment as an architect. In the spring of 1982, he interviewed with the appellee, Daniel, Mann, Johnson & Mendenhall ("DMJM") and accepted its offer of employment. On April 4, 1982, the appellant wrote a letter to the appellee in which he expressed pleasure in his decision to accept a position with them. In the same letter, however, he requested a written confirmation of his position with the appellee, as well as the agreed upon salary of $28,000 per year, for the first year. On April 8, 1982, the appellee sent a letter to the appellant stating:

> [t]his letter is meant to confirm your acceptance of a position as staff architect at Daniel, Mann, Johnson & Mendenhall (DMJM) in our Houston based offices. Your salary will be $28,000 per annum in this position. We will expect to see you the first part of May.

The appellant commenced his employment on April 27, 1982, but was terminated approximately 20 weeks later in September. This termination stemmed from a slow down in architectural work that caused the appellee to cease concentrating on architectural projects. The appellant sought employment elsewhere and obtained other employment in April 1983.

The appellant contends that he had a contract for employment for a period of one year with the appellee and that the appellee breached this contract, which resulted in his failure to receive $13,192.57, the balance of his annual salary. He further asserts that the appellee agreed to pay his moving expenses and owes him $767.99 to cover his move from Florida to Texas and $250.00 to cover his apartment security deposit that he forfeited because of his move.

After the appellant made demand for payment for his losses, the appellee refused to pay, and the appellant filed the present suit. Trial to a jury resulted in a verdict favorable to the appellee. The court entered final judgment for the appellee, denied the appellant's motion for new trial, and the appellant perfected his appeal.

The appellant contends in his first, third, fourth, and fifth points of error that the trial court erred because: 1) as a matter of law, the letter of April 8, 1982 was a contract for a definite period of time; 2) as a matter of law, the letter and factual circumstances constituted a contract for a definite period of time; 3) it admitted parol evidence creating ambiguity; and 4) it allowed the jury to construe an unambiguous instrument.

To support his contention, the appellant relies on the legal theory that: "where one is employed to work at so much per year, month, or week, the agreement imports a contract of hiring for the period of time mentioned in respect to the measure of time for the payment to be received." *Dallas Hotel Co. v. McCue*, 25 S.W.2d 902, 905 (Tex.Civ.App.—Dallas 1930, no writ). In two of the progeny cases, however, there was a written instrument construed as the contract, *Culkin v. Neiman–Marcus Co.*, 354 S.W.2d 397 (Tex.Civ.App.—Fort Worth

1962, no writ) (written offer of employment), and *Dallas Hotel Co. v. Lackey*, 203 S.W.2d 557 (Tex.Civ.App.—Dallas 1947, writ ref'd n.r.e.) (letter attached to and made part of agreement), and in *Dallas Hotel Co. v. McCue*, 25 S.W.2d at 902 (in which testimony raised a fact issue about the duration of contract), the court held that it was not error for the trial court to submit an issue on the duration of the oral employment contract.

The key question in the instant case is when the contract was consummated. The appellant contends in his pleadings that the contract was formed on April 8, 1982, the date of the letter from the appellee to the appellant. However, the letter states that it is *merely* a confirmation of the appellant's prior acceptance. "Where an unambiguous writing had been entered into between the parties, courts will look only to the language of the agreement to determine the intent of the parties." *Amistand, Inc. v. Frates Communities, Inc.*, 611 S.W. 2d 121, 127 (Tex.Civ.App.—Waco 1980, writ ref'd n.r.e.). The appellant also contends that the April 8, 1982 letter is the entire agreement. However, his pleadings and the evidence belie this contention because he also claims that his agreement with the appellee included an agreement to cover his moving and other expenses, and there is no mention of these expenses in the April 8th letter.

Although the letter vitiates any Statute of Frauds defense, it is not the contract. *See Adams v. Abbott*, 151 Tex. 601, 254 S.W.2d 78 (1952). The employment agreement was reached at the appellant's interview meeting with the appellee's representatives. The two letters that followed were letters affirming that an oral agreement had been reached at the interview. The evidence makes it clear that the parties disagree about what their original agreement had been. Thus, it was for the jury, as the finder of fact, to determine the intentions of the parties. *Erskine v. Wilson*, 27 Tex. 117, 119 (1863). It was not error for the judge to allow the jury to determine the intentions as to the duration of the contract after considering all the evidence presented. *Dallas Hotel Co. v. McCue*, 25 S.W.2d at 906.

The appellant's first, third, fourth, and fifth points of error are overruled.

The appellant contends in his second point of error that the trial court erred in refusing to submit his instructions to the jury on the definition of the term "agreement" in the context of an employment agreement.

The appellant has failed to preserve his error. Tex.R.App.P. 74(f) requires an argument to include: (1) a fair condensed statement of the facts pertinent to such points; and (2) such discussion of the facts and the authorities relied upon as may be requisite to maintain the point at issue. The appellant has failed to provide argument on this point. He has preserved nothing for review.

The appellant's second point of error is overruled.

The appellant asserts in his sixth point of error that the trial court erred in admitting the testimony of Ms. Audrey Crader to establish the customs in the commercial architectural industry for employment agreements. He contends specifically that those customs were not specifically pled by the appellee.

The appellant failed to specifically object to the lack of pleadings when he made his trial objection to Ms. Crader's testimony. He objected only on grounds of her qualifications as an expert to offer such testimony and as to relevancy. His objection on appeal fails to comport with his objection at trial, preserving nothing for this Court's review. Tex.R.App.P. 52(a).

The appellant's sixth point of error is overruled.

In light of our holding on the appellant's liability issues, we need not address the appellant's seventh, eighth, and ninth points of error.

The trial court's judgment is affirmed.

LEVY, Justice, dissenting.

My disagreement with the majority is in its treatment of a legal question—the existence and terms of an oral contract of em-

ployment—as a question of fact, thus authorizing the jury to have determined the contract's duration as a function of the parties' intentions.

In its letter of April 8, 1982, confirming Dech's acceptance as staff architect with the firm, the appellee stated, *inter alia,* "Your salary will be $28,000 per annum in this position. We will expect to see you the first part of May." And, in answer to Dech's earlier request for some indication as to when his "first review" might occur, as Dech delicately reminded his future employer, "at which time you [appellee] indicated additional consideration would be made to cover my [Dech's] moving expenses," appellee responded, in the same letter of confirmation, "Since DMJM reviews each employee every six months, you can expect your first review in December of 1982." Appellee obviously intended that Dech rely on this assurance of employment and fixed compensation, to induce Dech to accept its terms. In response, Dech immediately took steps to sever his employment and residence in Jacksonville, Florida, and move to Houston, where the appellee engineering firm had an office "with capabilities of architecture, planning, and construction administration," according to its brief.

It appears to be undisputed that after Dech began to work for DMJM on April 27, 1982, he performed his professional duties satisfactorily, and there was no indication of inferior work or dissatisfaction. Yet on September 27, 1982, merely 20 weeks later, Dech was terminated. The record reflects that appellee DMJM, a California corporation with offices throughout the United States and Japan, did not offer, or attempt to offer, to transfer Dech to any other office, to rehire him, to loan him to another company where he was needed, or to assist him in any other way to obtain employment.

Appellee argues on appeal that its offer of employment to Dech was ambiguous, and that this Court should ignore the "English rule," holding that employment duration is presumed by the terms of compensation, i.e., that specification of an employee's pay in terms of a time unit of day, month, or year, indicates an agreement, *in the absence of express limitation otherwise,* for an employment of a duration equal to the time unit specified. Such had been an earlier Texas rule, *Dallas Hotel Co. v. McCue,* 25 S.W.2d 902 (Tex.Civ.App.—Dallas 1930, no writ), which spawned progeny for the following 30 years: *Dallas Hotel v. Lackey,* 203 S.W.2d 557 (Tex.Civ.App.—Dallas 1947, writ ref'd n.r.e.); *City of San Antonio v. Condie,* 329 S.W.2d 947 (Tex. Civ.App.—San Antonio 1959, writ dism'd W.O.J.); *Culkin v. Neiman–Marcus Co.,* 354 S.W.2d 397 (Tex.Civ.App.—Fort Worth 1962, no writ).

Because of the ambiguity generated in its letter of confirmation, appellee argues, the letter should be interpreted in its favor, the employment contract ignored or discounted, and the "employment-at-will" doctrine invoked to justify its firing of Dech. *See Stanley v. H.J. Justin & Sons, Inc.,* 672 S.W.2d 327 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.); *Singh v. Cities Serv. Oil Co.,* 554 P.2d 1367 (Okla.1976). I disagree. Ambiguity should not be found in a strained or technical interpretation of a contract when a reasoned construction renders all the provisions of the contract enforceable and consistent. *See Southwestern Life Ins. Co. v. Houston,* 121 S.W.2d 619, 625 (Tex.Civ.App.—Fort Worth 1938, writ ref'd). A reasoned construction in the case at bar would, in my view, result in reading the contract as promising Dech employment for at least the one-year period, and at the pay, suggested in appellee's letters.

To permit the appellee to argue successfully that it should be allowed an advantage arising out of its own asserted ambiguity would repudiate venerable common-law principles of unconscionability. It indeed seems trite, but appropriate, to invoke the familiar and analogous rule of judicial construction of insurance policies—that if the language employed by an insurance company in its contracts is ambiguous, then it must be most strongly construed against the company and in favor of the insured. The parallel between "an employer" and "the insurer" is too obvious to require any elaboration, but I think it valid.

In *Little v. Bryce,* 733 S.W.2d 937 (Tex. App.—Houston [1st Dist.] 1987, no writ), I expressed my views in a concurring opinion on the harshness of the "employment-at-will" doctrine, consisting of its inherent indifference to the hardship and trauma of unemployment imposed thereby on the worker, whether professional or unskilled, who depends solely upon his labor to earn his livelihood. The circumstances of this case reaffirm quite stridently that it is not unreasonable to read into every employment relationship an implied promise by the employer not to act arbitrarily in dealing with the employee, conditioned upon fair dealing by the employee and good faith performance of his duties. *See Cancellier v. Federated Dep't Stores,* 672 F.2d 1312, 1318 (9th Cir.), *cert. denied,* 459 U.S. 859, 103 S.Ct. 131, 74 L.Ed.2d 113 (1982). Because of the harshness of this "employment-at-will" doctrine, at least 32 states have judicially carved exceptions therefrom, and seven states have abandoned it altogether in favor of the "good faith and fair dealing" concept, which they imply into every employment contract.[1]

Dech obviously made a significant, and perhaps major, change in his life when he resigned his position in Florida and moved to Houston, a distant community, solely on the strength of appellee's promise of employment. He did so, he testified, because he was told by a DMJM executive that he was being hired for at least a year. It was precisely for the protection of such vulnerable employees that the judicially created "employment-at-will" doctrine was repudiated in several states in favor of the "good faith and fair dealing" concept. In my view, equity requires that we consider the letters and the factual circumstances described above, particularly Dech's detrimental reliance upon DMJM's employment inducements, to constitute a contract, partially expressed and partially implied, for a definite period of one year, as a matter of law. I think it inequitable to do any less.

It is, perhaps, too easy for judges to forget that courts "possess the legitimate heritage of common law innovation that develops new principles to accommodate changing values." *Ivy v. Army Times Publishing Co.,* 428 A.2d 831, 835 (D.C. App.1981) (Ferren, J., dissenting). If we are not to ignore the economic and social realities of modern society, our thinking must change as that society changes, for it is that very society we are here to serve.

I would, accordingly, sustain appellant's points of error one, three, four, and five, reverse the judgment of the trial court, and remand for further proceedings.

---

**1.** See Comment, *The At–Will Doctrine: A Proposal to Modify the Texas Employment Relation-* *ship,* 36 Baylor L.Rev. 667 (1984).