RHEBY B. ADAMS v. CLYDE B. ABBOTT ET AL.

No. A-3703. Decided December 10, 1952.
(254 S. W., 2d Series, 78.)

*McKool, McDaniel & Bader* and *A. A. McDaniel,* of Dallas, for petitioner.

The Court of Civil Appeals erred in holding that the alleged contract for the sale of land was insufficient in description and was unenforcible in that it was too indefinite. Wilson v. Fisher, 144 Texas 53, 188 S.W. 2d 150; Osborne v. Moore, 112 Texas 361, 247 S.W. 498.

*Roland Boyd* and *Paul Worden,* both of McKinney, for respondents.

In reply to petitioner's propositions, cited Sorsby v. Thom, 122 S.W. 2d 275, writ of error dismissed; Texas Farm Bureau Cotton Ass'n. v. Stovall, 113 Texas 273, 253 S.W. 1101; Huffman v. Cartwright, 44 Texas 296.

MR. CHIEF JUSTICE HICKMAN delivered the opinion of the Court.

This is an action brought by respondents, Clyde B. Abbott and Maurice Montgomery, against petitioner, Mrs. Rheby B. Adams, in trespass to try title and for specific performance of an alleged contract for the sale by petitioner to respondent Abbott of a farm in Collin County. Mrs. Adams entered her ap-

pearance by filing an answer consisting of a plea of not guilty and a general denial. The alleged contract was evidenced by an exchange of letters between Montgomery, Mrs. Adams, and Worley Smith, Secretary-Treasurer of McKinney National Farm Loan Association. The remedy of specific performance was denied by the trial court and judgment was rendered accordingly that respondents take nothing by their suit. That judgment was reversed by the Court of Civil Appeals and judgment decreeing specific performance was rendered in favor of respondents. 248 S. W. 2d 514.

In their original petition the respondents, as plaintiffs, declared upon three letters passing between Montgomery and Mrs. Adams. Those letters are copied in full in the opinion of the Court of Civil Appeals. By trial amendment they alleged that other and different correspondence passed between the parties and between Mrs. Adams and Worley Smith and copied those various letters in their pleadings. When all of the letters are considered together they disclose these elements of a completed contract. The transaction had its inception in a letter written by Mrs. Adams, a resident of Russellville, Kentucky, but formerly a resident of Collin County, Texas, to respondent Maurice Montgomery, a farmer residing in Collin County and a friend of Mrs. Adams. In that letter she requested him to assist her "in the sale of my little farm out there." Her offer was to take $3,000.00 cash "and it can be any one's property." In his reply to that letter Montgomery submitted a counteroffer of $2,500.00 cash made by an undentified bidder (respondent Abbott). The letter disclosed that Montgomery was not negotiating for himself but for an unnamed person. We quote from that letter:

"Now I have 10 days on this bid. This is the only cash prospect I have to date. In case you are interested I will guarantee your money. I believe you know I don't want a penn*ie* from e*a*ther party. I would recommend you McKinney Federal Land Bank agent closing any deal when made."

That counteroffer was promptly accepted in a letter from Mrs. Adams addressed to Montgomery, in which she wrote:

"I will take the twenty-five hundred dollars for it, that you said the prospect offered you, and I hope he is still interested in it. I have the abstract in my possession here, for the 44 odd acres, but the Federal Land Bank has the other fifty acres abstract in their hands, as that is the parcel of land, I still owe, something UNDER one hundred dollars on. When you write me, to

do so, I will mail the abstract and all papers I have, to the Federal Land Bank, and write them to Act as my agent in this matter."

That correspondence constituted a definite counter offer of $2,500.00 in cash by an unidentified party and an unqualified acceptance of the offer by Mrs. Adams. By other correspondence copied or referred to in the opinion of the Court of Civil Appeals it is disclosed that the subject matter of the sale was "my farm in Collin County, Texas," and that it was near Farmersville. There is evidence in the record that Mrs. Adams owned no land in Texas other than the Collin County farm. In other letters written by Mrs. Adams reference was made to the land as being in three parcels. Quoting from one of her letters:

"There are three parcels of land in the place . . the first original fifty acres and two parts, (of the Stanford heirs'), of 22. something, in each of the two. All are recorded in McKinney in Rheby Barnes Adams' name . . had them changed that way, after Orville died."

**1, 2** We judicially know that McKinney is the county seat of Collin County, and the statement that "All are recorded in McKinney" is tantamount to a statement that they are recorded in the deed records of Collin County. We agree with the conclusion of the Court of Civil Appeals that "these writings were amply sufficient in description of the particular land sought to be conveyed; definitely furnishing numerous keys by which it might be identified with certainty." Pickett v. Bishop. 148 Texas 207, 223 S. W. 2d 222; Sanderson v. Sanderson, 130 Texas 264, 109 S. W. 2d 744; Wilson v. Fisher, 144 Texas 53, 188 S.W. 2d 150; City of Abilene v. Sayles, Comm. App. 295 S.W. 578.

**3** Petitioner bases her contention that the description is insufficint primarily upon the ground that only the three letters declared upon in respondents' original petition may be considered by the court. We cannot adopt that view. All the letters referred to in the trial amendment passed between the parties or between Mrs. Adams and Worley Smith, her representative, for the purpose of closing the transaction, and all dealt with the same subject, namely, the sale of the farm to an unidentified purchaser. A memorandum is required by the statute of frauds, not for the purpose of obtaining a contract in writing, but merely to furnish written evidence, signed by the party to be charged, of the obligation to be enforced against him. Therefore, a valid

memorandum of the contract may consist of letters and telegrams signed by the party to be charged and addressed to his agent or the other party to the contract, or even to a third person not connected with the transaction. 49 Amer. Jur., Statute of Frauds, § 334; 37 C.J.S., Frauds, Statute of, § 173; Street v. Johnson, 96 S.W. 2d 427.

4. The other principal ground upon which petitioner relies for a reversal of the judgment of the Court of Civil Appeals and affirmance of the judgment of the trial court is that the contract was lacking in mutuality and is therefore unenforceable by either against the other. The point presenting that contention is overruled for two reasons. In the first place the evidence is undisputed that Montgomery was duly authorized by Abbott to submit the counteroffer to Mrs. Adams. The fact that his agency was not evidenced by an instrument in writing is immaterial, for it has long been established as a rule in this court that written authority is not necessary to enable an agent to bind his principal in an executory contract for a sale or purchase of land. Fisher v. Bowser, 41 Texas 222; Hlawiczka v. Fitch, 197 S. W. 2d 135, error refused, NRE; Godfrey v. Central State Bank, 5 S. W. 2d 529, reversed on other grounds, Comm App., 29 S. W. 2d 1015. The case is clearly distinguishable from Sanger v. Warren, 91 Texas 472, 44 S. W. 477, relied upon by petitioner. One ground of distinction which we think sufficient for the purposes of this opinion is that in that case it was sought to hold the undisclosed principal liable on notes assumed by his alleged agent. The agent did not disclose that he was acting for any one other than himself. In the instant case the parties clearly understood that the agent was not acting for himself, but was acting for an unidentified principal.

For another reason the contract cannot be condemned for lack of mutuality. Mutuality of remedy at the inception of the contract is not an essential element in a suit for specific performance against a party who has bound himself in writing to the performance of a contract. The rule is that in a case where the contract was lacking in mutuality of remedy at its inception that element may be supplied by performance by the party seeking specific performance. The general rule is stated in 49 American Jurisprudence, Specific Performance, § 37, in this language:

"It is not essential that the mutuality of remedy exists at the inception of the contract, but that it is sufficient if such mutuality of remedy is available at the time suit is filed or

even at the time of the decree, and that where the contract was originally lacking in mutuality this element may be supplied by voluntary performance on the part of the party seeking specific performance. Hence, the fact that when executed the contract was unilateral or was not specifically enforceable by both parties at its inception is not conclusive of the right of one of them subsequently to have specific performance."

That is the established rule followed by this court. Milliken v. Townsend, (Comm. App.), 16 S. W. 2d 259; Sanderson v. Sanderson, 130 Texas 264, 109 S. W. 2d 744; Langley v. Norris, 141 Texas 405, 173 S. W. 2d 454, 148 A.L.R. 555. Respondent Abbott has brought himself within this rule by his voluntary offer of performance. He has been ready, willing and able to pay the purchase price, and has offered to pay that amount into court. The sufficiency of his tender of performance is not questioned. If Clegg v. Brannan, 111 Texas 367, 234 S. W. 1076, be construed to hold that mutuality of remedy must exist at the time the contract is entered into in order for specific performance to be available against the party to be charged who has signed the contract or memorandum in writing, it could not be harmonized with the later opinions by this court and would have to yield to them as authority. Our conclusion is that the Court of Civil Appeals has correctly decided each question presented in this case, and its judgment is accordingly affirmed.

Opinion delivered December 10, 1952.