H. M. BODDY, Appellant,

v.

Gene GRAY, Appellee.

No. 8344.

Court of Civil Appeals of Texas, Amarillo.

April 16, 1973.

Rehearing Denied April 16, 1973.

Nelson, Sherrod, Carter & Oldham, Walter Nelson, Wichita Falls, for appellant.

Kolander, Templeton & Hamilton, Hal Miner, Amarillo, for appellee.

## ON MOTION FOR REHEARING

ELLIS, Chief Justice.

Our original opinion is withdrawn, and the following opinion, issued subsequently to appellant's motion for rehearing, is substituted therefor:

This is an appeal from a take nothing summary judgment rendered against a plaintiff seeking relief in an action based upon the defendant's alleged breach of an agreement to purchase certain real estate from the plaintiff. Affirmed.

H. M. Boddy, plaintiff-appellant, instituted a suit against Gene Gray, defendant-appellee, seeking specific performance, or, alternatively, damages for an alleged breach by Gray of an agreement to purchase certain ranch lands owned by Boddy. Gray pleaded the statute of frauds as a defense. Also, Gray filed a motion for summary judgment alleging that the various separate writings relating to the real estate transaction failed to comply with the requirements of the statute of frauds and were therefore unenforceable. Boddy filed a motion for summary judgment pleading the existence of a binding contractual relationship between the parties for the sale of the land. The trial court granted Gray's motion for summary judgment and denied Boddy's claim for relief. From the judgment rendered, Boddy brings his appeal asserting two points of error. He challenges the judgment on the grounds that (1) the writings in evidence are sufficient as a contract to comply with the statute of frauds, or (2) even if the statute of frauds were not satisfied, promissory estoppel has been established as a bar to the defense based upon such statute.

Boddy is the owner of 1280 acres of ranch land located in Little River County, Arkansas. Also, Boddy was the lessee of certain adjacent land under a lease dated July 6, 1971, from Otis Dante and J. B. Seligson, as lessors. Following a telephone call from Gray to Boddy concerning the possible sale of the land owned by Boddy,

the parties met, drove over the land, and discussed the price. Subsequently, there were various conversations between the parties concerning the prospective sale and purchase of the land. On September 1, 1971, the parties signed a handwritten notation or memorandum which reads as follows:

> "                                  9–1–7
> "Price                    360,000
>   Cash        60,000
>   Cash FLB    250,000
>   2nd lien    50,000      360,000
>                           ―0―
> "2nd lien payable 6500 annually—1st pmt 1–15–73 interest calculated at PCA + ½%—bal on prin.
> "Taxes due Oct. 1971 to be paid by Boddy. All Equipment to go with place except 2 horses, saddles, Ford tractor & equipment.
> "Hay in barn to be paid for by Gray at 50¢
> "Leases on Seligson Dante and Mr. Locke to be assigned in so far as possible
>                           H. M. Boddy
>                           Gene Gray"

An application, dated September 13, 1971, was made by Gray for a loan with the Federal Land Bank Association in Texarkana, Arkansas. In the application form it was stated that the purpose of the loan was to purchase the 1280 acres of land described therein from Boddy at a purchase price of $360,000. The loan was subsequently approved, and on October 14, 1971, Gray received from the Federal Land Bank in Texarkana an attorney's title opinion showing the condition of the title. The Federal Land Bank had in its possession the necessary information and instruments to clear the title to the land by November 10, 1971, the date purportedly scheduled for closing the transaction. Also, the record contains a copy of an assignment to Gray of the Seligson-Dante lease, dated November 1, 1971, executed by Boddy and Gray. There is summary judgment evidence to the effect that Boddy had some cattle on the Little River County land that he sold and removed part of the cattle preparatory to his giving possession of the land by November 10, 1971. On approximately November 8, 1971, Gray notified the Federal Land Bank that the loan would

not be closed on November 10. Also, on approximately November 8, Gray notified Boddy that he had decided not to buy the ranch, and on December 15, 1971, Gray finally advised Boddy that he would proceed no further toward closing the transaction. Boddy claims that he is entitled to specific performance, or to recover damages for losses and expenses resulting from the sale of some of his breeding cattle, the moving of other cattle and consequent interference with his ranching operations, all of which were occasioned by Gray's alleged breach of the contract.

In his first point of error, Boddy contends that the trial court erred in granting Gray's motion for summary judgment on the basis of non-compliance with the statute of frauds since Gray failed to establish as a matter of law that there was no memorandum in writing signed by Gray as required by the statute.

The Statute of Frauds, Tex.Bus. & Commerce Code Ann. § 26.01, V.T.C.A., provides in part:

> "(a) A promise or agreement described in Subsection (b) of this section is not enforceable unless the promise or agreement, or a memorandum of it, is
>
> "(1) in writing; and
>
> "(2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him.
>
> "(b) Subsection (a) of this section applies to"
>
> *   *   *   *   *   *
>
> "(4) a contract for the sale of real estate;"

Boddy contends that there are three separate writings which, when combined, serve to constitute a contract sufficient to satisfy the requirements of the statute of frauds. The first writing or memorandum, hereinabove set out, dated "9–1–7," consists of certain figures and statements, including a reference to the assignment of certain

leases, but there is not included within the writing any promise to buy "land," and it does not describe the parties or the land purported to be the subject of the contract. The loan application is the second writing which Boddy contends is part of the contract. Although the stated purpose of applying for the loan relates to the matter of securing part of the purchase price of the property, the application makes no reference to the above mentioned memorandum and contains no language expressly indicating the existence of a binding agreement on the part of Gray to buy the land therein described. The third writing contended to be a part of the "contract" is the assignment of the Seligson-Dante lease. It contains no promise to buy or any description of or reference to the Boddy land.

■ A written contract for the sale of realty is void under the statute of frauds if it does not describe the land in such a way as to identify it with reasonable certainty. Smith v. Sorelle, 126 Tex. 353, 87 S.W.2d 703 (1935); Smith v. Griffin, 131 Tex. 509, 116 S.W.2d 1064 (Tex. Com.App.1938, opinion adopted). This description must be furnished within the original writing itself, or by reference to some other *existing* writing. The original writing, dated "9–1–7." makes no reference to any other writing. Although it contained the initials F.L.B. with 250,000 written on the same line, we do not consider that such notation is sufficient reference to incorporate the loan application to the Federal Land Bank into the first memorandum. Wilson v. Fisher, 144 Tex. 53, 188 S.W.2d 150 (Tex.Com.App.1945, opinion adopted). Even if sufficient reference be assumed, the loan application was not in existence until September 13, 1971, which fact would preclude its incorporation. Wilson v. Fisher, supra.

■ In order to satisfy the requirements of the statute of frauds, the writings must be complete within themselves in every material detail and must contain all the essentials of a contract so that they may be as-

certained from the writings without resort to parol testimony. Thus, we can only look to the writings for the essential elements of the alleged contract. Wilson v. Fisher, supra; Bachman Center Corp. v. Sale, 359 S.W.2d 290 (Tex.Civ.App., Dallas 1962, writ ref'd n.r.e.).

Plaintiff seeks to support its contention that each of the three writings should be considered as an integral part of the contract by the holding in Adams v. Abbott, 151 Tex. 601, 254 S.W.2d 78 (1952). Under the facts of that case, the different writings were related to each other in that they were letters communicating offers and counteroffers to the different parties of the transaction. These letters were considered to be an integral part of the contract due to the relation between them, but in the present case, the loan application is independent of any binding obligation between plaintiff and defendant. Boddy further contends that a memorandum is required by the statute of frauds, not for the purpose of obtaining a contract in writing, but merely to furnish written evidence, signed by the party to be charged, of the *obligation* to be enforced against him, citing *Adams* as authority. But it must be recognized that in the instant case, the application for a loan is not evidence of any written *obligation*. The making of the application was a procedure for determining whether a loan could be secured, but it did not evidence any obligation on the part of Gray to purchase the therein described land. The fact that the application form states that the purpose of the loan was to purchase 1280 acres of land for $360,000 does not bind Gray to such a purchase when there is no reference to any written promise on the part of Gray to buy such land. This case is distinguishable from Adams v. Abbott, supra, because of the absence of interrelated reference to the different instruments relied upon to constitute the contract.

■ Assuming the existence of a sufficient relationship between the different

instruments, there is no evidence of a written promise to buy or sell the particular land involved in the suit and thus no obligation on the part of either party. The writings do not disclose any written promise on the part of Gray to purchase the land in question. When the statute of frauds is asserted as a defense, it is necessary that the written memorandum show an agreement. Moore Bros. v. Kirkpatrick, 172 S.W.2d 135 (Tex.Civ.App., Eastland 1943, no writ). "(A)n instrument that creates no right and imposes no obligation is not a contract, and no right of action can be predicated on it." 13 Tex. Jur.2d Contracts § 2 (1960). Further, since the essential elements of a contract required to be in writing can never be supplied by parol evidence, Buratti and Montandon v. Tennant, 147 Tex. 536, 218 S.W. 2d 842 (1949), we have concluded that the written instruments relied upon in this case are not sufficient to comply with the statute of frauds. We, therefore, overrule appellant's first point of error.

In his second point of error, Boddy contends that even if the statute of frauds had not been satisfied as a matter of law, his summary judgment proof would avoid the statute of frauds defense asserted by Gray on the theory of promissory estoppel and thereby entitle him to the relief sought in this suit. Gray joins issue and contends that the doctrine of promissory estoppel is wholly inapplicable to the facts of this case. Boddy relies upon the holding of the Texas Supreme Court in the case of "Moore" Burger v. Phillips Petroleum Co., et al., 492 S.W.2d 934 wherein the agreement sought to be enforced was not signed by the defendant, but the summary judgment evidence was sufficient to raise factual issues of promissory estoppel in avoidance of the defense of the statute of frauds. Under the summary judgment proof in *"Moore" Burger,* there was a definite promise upon which the plaintiff re-

lied, that promise being that a twenty year lease, clear and definite in its terms, would be signed by the defendant's trustee if the plaintiff would not bid on the property at a public auction. The plaintiff relied upon such promise to sign the lease, the lease was not signed, and the court held that if such evidence be accepted as true, the enforcement of the statute of frauds would plainly amount to a fraud upon the plaintiff's rights. Further, the opinion sets out that promissory estoppel is to be regarded as a defensive plea—a plea in avoidance and confession—serving the function of estopping a promissor from denying the enforcibility of his promise.

We note that the original opinion in *"Moore" Burger* was dated October 4, 1972, and that on March 7, 1973, a supplemental opinion by the Supreme Court was issued on motion for rehearing, 492 S.W.2d 940, wherein it was stated:

"Respondents read the Court's opinion to make any promise enforceable, though within the proscription of the statute of frauds, if foreseeable action or forbearance by the promisee meets the requirements of Section 90 of the Restatement of Contracts [1] (or fulfills Section 217A of the Restatement, Second, Supp.Tent. Draft No. 4, 1969). This is not the holding.

"The promise which is determinative here is the promise to sign a written agreement which itself complies with the statute of frauds. No other promise was discussed by the Court in the recitation of the summary judgment evidence, whereas promises to sign were set forth at two points, followed by the recitation that, relying on these promises, 'Moore' Burger did not bid at the sale of the City land. This is the significance of the emphasis upon Section 178, comment f, Restatement, Contracts, and the citation to Cooper Petroleum Co. v. La Glo-

[1]. "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." ·

ria Oil and Gas Co., 436 S.W.2d 889, 896 (Tex.1969), where 'the promise was to sign a written guaranty, and a written guaranty would have been enforceable.'"

■ It has been held that an agreement for the sale of land cannot be specifically enforced unless the contract involved is sufficiently definite in its essential provisions. Bryant v. Clark, 163 Tex. 596, 358 S.W.2d 614 (1962). Further, contracts for the sale of real estate not in compliance with the requirements of statute of frauds not only cannot be specifically enforced, but for the same reason a claim for damages will not be enforced. See Wilson v. Fisher, supra; Robertson v. Melton, 131 Tex. 325, 115 S.W.2d 624, 118 A.L.R. 1505 (1938). Also, see the concurring opinion of Justice Greenhill in Wheeler v. White, 398 S.W.2d 93, 98 (Tex.1965).

As set out in the forepart of this opinion, the writings relied upon in the instant case, although signed by Gray, did not sufficiently constitute an enforceable written contract for the sale of the land in question as required by the statute of frauds. Thus, it is our opinion, that this case is distinguishable from "Moore" Burger v. Phillips Petroleum Co., et al., supra, for as stated in the supplemental opinion by the Supreme Court, the promise which was determinative there was the promise to sign a "written agreement which itself complies with the statute of frauds." The agreement in *"Moore" Burger* which the defendant's trustee promised to sign was complete as an enforceable obligation, and the promise to sign a guaranty in La Gloria was a written agreement "which would have been enforceable." In those cases the agreements were complete in all their essential terms, and only the "promised" signature was lacking. Here, the writings purporting to constitute an agreement were not sufficient as an enforceable contract for

the sale of land "which itself complies with the statute of frauds." The writings, although signed by Gray, in the aggregate, contained neither a binding promise to buy nor other vital terms such as specific interest rate on the larger loan or a definite time for possession of the premises, all demonstrating that the purported contract was not complete in all essential terms.

■ The essential elements of the contract itself cannot be created by estoppel; rather estoppel serves to prevent a party's conduct and actions from operating as a denial of a contractual obligation already created. See Southland Life Ins. Co. v. Vela, 147 Tex. 478, 217 S.W.2d 660 (1949); Reeves v. New York Life Ins. Co., 421 S.W.2d 686 (Tex.Civ.App., Dallas 1967, writ ref'd n. r. e.). Also, see Wheeler v. White, supra.

■ The cases hereinabove cited demonstrate the strictness of the standards to be applied in instances wherein it is sought to avoid the defense of the statute of frauds by invoking the equitable doctrine of promissory estoppel. From a review of the summary judgment evidence submitted, we have concluded that since the terms of the purported written contract here in question were not sufficiently established as an enforceable agreement, the doctrine of promissory estoppel has no application in this case.

Thus, it is our opinion that the purported contract under which the appellant seeks relief is unenforceable by reason of noncompliance with the requirements of the statute of frauds, and that the defense asserted under the statute has not been barred by the doctrine of promissory estoppel. Accordingly, the judgment of the trial court is affirmed, and the appellant's motion for rehearing is overruled.