Reversed and Rendered and Opinion filed February 18, 2010.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-08-00756-CV

___________________

 

FAROUK (FRANK) ALATTAR, Appellant

 

V.

 

JOHN GANIM, Appellee



 



 

On Appeal from the 400th District Court

Fort Bend County, Texas



Trial Court Cause No. 06-CV-148738

 



 

 

MEMORANDUM OPINION

            In the dispositive issue in this appeal,
we are asked to determine whether the statute of frauds bars a claim for
appellant’s alleged breach of an agreement to purchase real property on behalf
of a partnership.  Because the statute of frauds applies but was not satisfied,
we reverse and render judgment that appellee take nothing.

I.  Factual and Procedural Background

            On
March 17, 2004, friends Farouk Alattar, a/k/a Frank Alattar, and John Ganim
toured a property of approximately 3,800 acres (the “Property”) in Washington
County, Texas.  Two days later, on March 19, 2004, Ganim again was present when
Alattar executed a Purchase and Sale Agreement (“Purchase Agreement”) to buy the
land.  In the Purchase Agreement, the buyer is identified as “Frank Alattar,
Trustee.”  The trust’s name and beneficiaries are not identified.  

            On March 22, 2004, Alattar and Ganim signed
a document subsequently referred to as the “Letter of Intent.”  This document
provides in pertinent part as follows:

1.         Partnership will be 50 – 50% of all profits
between John Ganim and Farouk Alattar.

2.         Farouk Alattar will be the sole person making
decisions for any future sale of property as long as it’s double or more price
than we bought it for to avoid misunderstandings. . . .

. . .

5.         Both partners have the right, after any sale, to
pull 50% of the proceeds . . . .

. . .

10.       Both partners could use any part of the property
at anytime [sic] until property is sold.

11.       Any partner that wants a piece of the land for
himself or family and friends, it must be sold at fair market price regardless.

. . .

13.       This partnership will not be valid if the Bank
does not accept either one’s credit application.

Although there are references in the Letter of Intent
to a “future sale of property,” the property to be sold is not identified.  The
Letter of Intent contains no references to any property contributed or to be
contributed to the partnership, or property purchased or to be purchased by or
for the partnership. 

            As relevant to this appeal, the record
also contains an unsigned letter dated March 25, 2004 from attorney Michael Noonan
to Frank Alattar (the “Unsigned Letter”).  The letter bears the heading, “Re:
Earnest Money Contract – 3800 acres – Washington County, Texas.”  In the Unsigned
Letter, Noonan wrote, “I have had an opportunity to review the Earnest Money
Contract concerning your purchase of the 3800 acres near Brenham.”  After
providing legal advice on a number of points pertaining to the Purchase
Agreement, Noonan wrote, “We have had some discussions on proposed entity
structure for this transaction and I will commence the formation of a limited
partnership and a limited liability company to be general partner.”

            On March 26, 2004, Noonan again wrote to
Alattar; his signed cover letter (“Cover Letter”) bears the heading “Re: Gates
Bluebonnet Hills, Ltd. and Alattar Interests, LLC.”  With the Cover Letter,
Noonan enclosed documents creating these organizations.  Noonan further wrote,
“I am sending a copy of the partnership materials to John Ganim for his
review. . . . Please review the materials and advise as to any further
changes . . . . Once it is all approved, please sign the
documents and return them to me for filing . . . .”

            Shortly thereafter, Alattar and Ganim
executed an Agreement of Limited Partnership of Gates Bluebonnet Hills, Ltd.
(“Partnership Agreement”).  By its terms, the Partnership Agreement was
effective March 29, 2004.  General partner Alattar Interests, LLC owns a 1%
interest in the partnership, and John Ganim and Farouk Alattar, as limited
partners, each own a 49.50% interest in the partnership.  Two exhibits form the
last pages of the Partnership Agreement.  Exhibit A identifies the parties,
their addresses, their percentage interests, and the fair market value of the
initial contributions of each.  Alattar Interests, LLC’s contribution is valued
at $10, Alattar’s contribution is valued at $250,000, and Ganim’s contribution
is valued at $1,000,000.  Exhibit B is labeled “Assets to be Contributed by
General Partner,” but is otherwise blank.

            After Ganim executed the Partnership
Agreement, his attorney, William R. Bromley, reviewed it.  On April 2, 2004,
Bromley wrote to Ganim that the terms of the Partnership Agreement, which
Bromley referred to as “the proposed limited partnership agreement,” were not
the same as the terms in the Letter of Intent.  Bromley suggested changes that,
in his view, were “so necessary that [he] would not do the deal” unless such
changes were made.  Ganim testified that he faxed Bromley’s letter to Alattar,
whereupon Alattar told Ganim that he, Alattar, would not do business with Ganim. 
On April 7, 2004, Alattar’s attorney wrote Ganim’s attorney that Alattar would
not proceed with the partnership.

            On May 13, 2004, Ganim sued Alattar,
eventually asserting claims for fraud, constructive fraud, fraudulent
inducement, negligent misrepresentation, breach of contract, and breach of
fiduciary duty.  In his pleadings, Ganim sought an accounting, lost profits,
punitive damages, the imposition of a constructive trust, specific performance,
attorneys’ fees, and costs.

            While these events were unfolding, the Property
owners became involved in litigation over title to the Property, causing the
closing date of the sale to be delayed for approximately a year.  On May 17,
2005, the Property was conveyed by special warranty deed (“Deed”), effective
April 20, 2005, to “Farouk Alattar, Trustee.”  As with the Purchase Agreement,
the Deed does not identify the trust’s name or beneficiaries.

            When the case was tried to a jury in
March 2008, Ganim asserted that six documents, taken collectively, established
that Alattar acquired the Property on behalf of the Alattar-Ganim partnership. 
Arguing that the writings failed to satisfy the statute of frauds, Alattar
moved for an instructed verdict, which the trial court denied.  He raised the
same argument in an objection to the jury charge, and the trial court overruled
the objection.  Thus, in Question No. 2 of the charge, the jury was asked, “Do
you find that the following writings as shown in the Plaintiff’s Exhibits
listed below constituted an agreement whereby the 3,800 Acres purchased by
Frank Alattar, Trustee, was [sic] for the benefit of the Gates Bluebonnet Hills
Limited Partnership?”  The exhibits listed consisted of the Purchase Agreement,
the Letter of Intent, Noonan’s Unsigned Letter to Alattar, Noonan’s signed Cover
Letter to Alattar, the Partnership Agreement, and the Deed.[1] 
The jury found that the writings constituted such an agreement, and that
Alattar failed to comply with it.  

            In calculating damages, the jury was
asked to consider only (a) the expenses Ganim paid in reliance on the
agreement, which the jury found to be $1,500.00; and (b) “49.5% of the
difference, if any, between the present value of the 3,800 Acres, and the
amount paid for the 3,800 Acres by Alattar, less all costs and expenses, if
any, paid by Mr. Alattar in connection with the 3,800 Acres.”[2] 
The jury found the latter sum to be $2,445,300.00.  The trial court denied
Alattar’s motion to disregard these jury findings and render judgment that
Ganim take nothing, and instead rendered judgment in Ganim’s favor for
$2,445,300.00, together with post-judgment interest.[3] 


II.  Issues Presented

            Although Alattar presents five
issues for review, his first issue is dispositive.  He contends that the six
writings the jury found to constitute an agreement between Alattar and Ganim do
not satisfy the statute of frauds.  Ganim responds that the statute of frauds
does not apply, or alternatively, that it is satisfied.[4] 


III. 
Analysis

 

            Although Alattar does not specify whether
he is challenging the trial court’s denial of his motion for directed verdict,
the denial of his motion to disregard jury findings and enter judgment
notwithstanding the verdict, or both, the same standard of review applies.  See
City of Keller v. Wilson, 168 S.W.3d 802, 823, 825 (Tex. 2005).  “Judgment
without or against a jury verdict is proper at any course of the proceedings
only when the law does not allow reasonable jurors to decide otherwise.”  Id.
at 823.  Such a judgment in a defendant’s favor is appropriate “if the
plaintiff admits or the evidence conclusively establishes a defense to the
plaintiff’s cause of action.”  Prudential Ins. Co. of Am. v. Fin. Review
Servs., Inc., 29 S.W.3d 74, 77 (Tex. 2000).  

            According to Alattar, the evidence
conclusively established that the agreement the jury found to exist is barred
by the statute of frauds.  Whether an agreement falls within the statute of
frauds is generally a question of law.  Bratcher v. Dozier, 162 Tex.
319, 321, 346 S.W.2d 795, 796 (1961).  If the statute applies, then the
agreement is unenforceable unless it is in writing and signed by the person to
be charged with the promise or agreement or by someone lawfully authorized to
sign for him.  Tex. Bus.
& Com. Code Ann. § 26.01(a) (Vernon 2009). 
The determination of whether a particular agreement is enforceable generally
presents a question of law.  Vt. Info. Processing, Inc. v. Mont.
Beverage Corp., 227 S.W.3d 846, 852 (Tex. App.—El Paso 2007, no pet.).  Questions
of law are subject to de novo review.  In re Humphreys, 880 S.W.2d 402,
404 (Tex. 1994).  

A.        Applicability of the
Statute of Frauds

 

            The statute of frauds applies to a contract
for the sale of real property.  Tex.
Bus. & Com. Code Ann. § 26.01(b)(4).  It is undisputed that there
was an agreement for Alattar to purchase the Property; indeed, at trial, both
parties relied on the Purchase Agreement and the Deed.  The disputed issues relevant
to this appeal were (1) whether Alattar agreed to purchase the Property for an
Alattar-Ganim partnership, and if so, (2) whether Alattar failed to comply with
such an agreement.  The jury answered both questions in the affirmative.  An
agreement to purchase property is a contract for the sale of real estate; thus,
the statute of frauds applies.

            Ganim, however, asserts that the agreement embodied in the six documents is not a contract for the
sale of real estate.  In support of this position, he points out that he ultimately
asked the jury to award him benefit-of-the-bargain damages rather than
conveyance of the Property.  But a contract’s enforceability is not determined
by the type of damages one party chooses to seek for its breach.  See
Nagle v. Nagle, 633 S.W.2d 796, 801 (Tex. 1982) (claim for breach
of oral contract to convey real property barred by statute of frauds, even
though plaintiff sought money damages for “loss of bargain” rather than
specific performance).  The question of whether the statute of
frauds applies is a matter of law, not a matter of pleading.  See Haase v.
Glazner, 62 S.W.3d 795, 799 (Tex. 2001) (holding if a bargain is unenforceable
under the statute of frauds, a party cannot circumvent the statute by recasting
his argument and seeking benefit-of-the-bargain damages).[5]
  

            Ganim also insists that no
additional conveyance was required for the partnership to own an interest in the
land, because the partnership acquired equitable title to the Property when
Alattar purchased legal title to it.  Thus, according to Ganim, the partnership,
acting through Alattar, purchased the Property.  This argument focuses on whether
the Property was sold under the agreement to the partnership acting through
Alattar, or instead was sold to Alattar as trustee of an unidentified trust
unrelated to the partnership.  In either event, the agreement is one for the
sale of real estate and subject to the statute of frauds.[6] 
White v. McNeil, 294 S.W. 928, 930 (Tex. Civ. App.—Fort Worth 1927, no
writ) (explaining that the parties’ intentions that property become a
partnership asset “could make no difference”
in the applicability of the statute of frauds).

            Having concluded that
the agreement is subject to the statute of frauds, we next consider whether the
statute’s requirements have been satisfied.

B.        Requirements of the
Statute of Frauds

            Alattar contends that the agreement found by the jury does not satisfy the statute of frauds
because the writings do not incorporate or refer to each other or to the
details of the alleged agreement, and several of the writings were not signed
by him or his authorized representative.  We agree.  The signed documents are not
sufficiently connected to any other documents that individually or collectively
set forth the essential terms of the agreement alleged by Ganim to exist.  A
wealth of authority supports Alattar’s argument that the six documents do not meet
the requirements of the statute of frauds.  

            First, to meet the statute’s
requirements, a written memorandum must contain all essential terms.  Cohen
v. McCutchin, 565 S.W.2d 230, 232 (Tex. 1978) (“[T]here must be a written
memorandum which is complete within itself in every material detail, and which
contains all of the essential elements of the agreement, so that the contract
can be ascertained from the writings without resorting to oral testimony.”);
BACM 2001-1 San Felipe Rd., L.P. v. Trafalgar
Holdings I, Ltd., 218 S.W.3d 137, 144 (Tex. App.—Houston [14th Dist.] 2007,
pet. denied) (same); Walker Ave. Realty Co. v. Alaskan Fur Co., 131
S.W.2d 196, 198 (Tex. Civ. App.—Galveston 1939, writ ref’d) (“[T]he written
memorandum or proposal must within itself or by reference to other writings,
and without recourse to parol evidence, contain all the elements of a valid
contract, including an identification of both the subject matter of the
contract . . . and the parties to the contract.”)
(citations omitted); accord, Dobson v. Metro Label Corp., 786
S.W.2d 63, 65 (Tex. App.—Dallas 1990, no writ).  

            Second, if the written memorandum
consists of multiple documents, the later documents must refer to the earlier
ones.  See, e.g., Morrow v. Shotwell, 477 S.W.2d 538, 539
(Tex. 1972); Owen v. Hendricks, 433 S.W.2d 164, 166–67 (Tex. 1968); Taber
v. Pettus Oil & Ref. Co., 139 Tex. 395, 399, 162 S.W.2d 959, 961
(1942); Crowder v. Tri-C Res., Inc., 821 S.W.2d 393, 396 (Tex.
App.—Houston [1st Dist.] 1991, no writ); see also Boddy v. Gray, 497
S.W.2d 600, 603 (Tex. Civ. App.—Amarillo 1973, writ ref’d n.r.e.) (“Although it
contained the initials F.L.B. with 250,000 written on the same line, we do not
consider that such notation is sufficient reference to incorporate the loan
application to the Federal Land Bank into the first memorandum.”); Gruss v.
Cummins, 329 S.W.2d 496, 500 (Tex. Civ. App.—El Paso 1959, writ ref’d
n.r.e.) (“What is necessary, then, is that a writing, so signed by the person
to be charged, refer to all writings not so signed that are sought to be made a
part of the memorandum.”).  “Oral evidence can only bring together the
different writings.  It cannot connect them.  They must show their connection
by their own contents.  The connection must be apparent from a comparison of
the writings themselves.”  Douglass v. Tex.-Canadian Oil Corp., 141 Tex.
506, 509, 174 S.W.2d 730, 731 (1943); see also Gruss, 329 S.W.2d at
502 (stating that “parol evidence is not admissible to show that even
signed writings relate to the same transaction”).  

            Third, the documents
referred to must be in existence.  Jones v. Kelley, 614 S.W.2d 95, 99
(Tex. 1981) (stating that a writing must “furnish within itself or by reference
to other identified writings then in existence, the means or data by
which the particular land to be conveyed may be identified with specific
certainty”) (emphasis added); Boddy, 497 S.W.2d at 603 (holding that a
document not yet in existence cannot be included by incorporation).  

            Fourth, the memorandum
must be signed by the party to be charged or by that party’s authorized
representative.  Tex. Bus. &
Com. Code Ann. § 26.01(a)(2); Biko v. Siemens Corp., 246 S.W.3d 148,
159 (Tex. App.—Dallas 2007, pet. denied) (holding claim barred by the statute
of frauds because, inter alia, “[m]ost of the documents appellants rely
upon are not signed by the parties they seek to charge”); Gruss, 329
S.W.2d at 500.

            The six documents the jury found to
constitute the parties’ agreement do not fulfill the statute’s requirements.  To
illustrate why this is so, it is helpful to examine them in chronological
order.

C.        Comparison of the Documents’ Contents to
the Statute’s Requirements

            The earliest of
the writings on which Ganim relies is the Purchase Agreement. 
Because the other documents were not yet in existence, the Purchase Agreement
does not incorporate them by reference.  Moreover, it contains no
mention of Ganim or a proposed Alattar-Ganim partnership, and does not identify
the name or beneficiaries of the trust Alattar represented. 

            The next document executed was the Letter
of Intent in which Alattar and Ganim memorialized their plan to form a
partnership.  Although this writing was finalized after Alattar executed the
Purchase Agreement in Ganim’s presence, it contains no reference to the
Purchase Agreement, the Property, a trust, a trustee, or a trust beneficiary.  The
letter addresses future sales of property by the proposed partnership, but
contains no mention of any purchase of property by Alattar, Ganim, or the
partnership.  The parties expressed no intent in the letter as to whether
property was to be conveyed or contributed to the future partnership by Alattar,
Ganim, or a third party.  This document cannot properly be considered as part
of the “written memorandum” because no other document signed by Alattar or
Alattar’s authorized representative refers to it or adopts it.  Moreover, it is
a proposal,[7] and the two-member
partnership it describes is not the same as the three-member partnership that
Alattar and Ganim actually entered. 

            The third document in the series is the Unsigned
Letter.  In this letter from attorney Noonan to Alattar, Noonan refers to the
Purchase Agreement, but does not mention Ganim, the Letter of Intent, a
proposed Alattar-Ganim partnership, a trust, or a trust beneficiary.  Like the
Letter of Intent, this document cannot properly be considered as part of a
written memorandum under the statute of frauds because no document signed by
Alattar or his authorized representative refers to it or adopts it. 

            The next document in the chronology is
the signed Cover Letter from Noonan to Alattar.  In this letter, Noonan wrote that
he enclosed several documents pertaining to the creation of Alattar Interests,
LLC, an organization wholly owned by Alattar that serves as the general partner
in the limited partnership of Gates Bluebonnet Hills, Ltd.  Noonan also
enclosed documents creating Gates Bluebonnet Hills, Ltd., the entity in which
Alattar and Ganim became limited partners.  But in the Cover Letter, Noonan
does not refer to the Property, the Purchase Agreement, the Letter of Intent, a
trust, a trustee, a trust beneficiary, or his own earlier Unsigned Letter.

            The Partnership Agreement is the fifth
document on which Ganim relies.  In this agreement, Alattar and Ganim do not
refer to the Property, the Purchase Agreement, the Letter of Intent, a trust, a
trustee, a trust beneficiary, the Unsigned Letter, or the Cover Letter.

            Lastly, Ganim relies on the Deed by which
Alattar acquired the Property.  The Deed is not signed by Alattar or his representative,
and it contains no mention of the Purchase Agreement, the Letter of Intent, the
Unsigned Letter, the Cover Letter, Ganim, the Alattar-Ganim partnership, or the
Partnership Agreement.  Like the Purchase Agreement, the Deed does not identify
the trust or trust beneficiaries for whom Alattar purchased the Property.

            This collection of
documents falls short of the requirements imposed by the statute of frauds. 
Although Ganim attempts to link the documents using parol evidence, inference,
or their proximity in time, such approaches cannot be reconciled with firmly-entrenched
precedent.  See, e.g., U.S. Enters., Inc. v. Dauley, 535
S.W.2d 623, 628 (Tex. 1976) (“[P]arol must not constitute the framework or
skeleton of the agreement.  That must be contained in the writing.” (quoting Wilson
v. Fisher, 144 Tex. 53, 57, 188 S.W.2d 150, 152 (1945))); Morrow,
477 S.W.2d at 540–41 (holding that the requirement of a written memorandum was
not satisfied even though the record demonstrated the parties’ knowledge and
intent, and the property’s location and boundaries were identified on a plat
made from extrinsic evidence); Owen, 433 S.W.2d at 167 (“The only
permissible extension ‘of the doctrine requiring an express reference in the
signed paper is where the signed paper at the time of the signature can be
shown from its contents to be based on an adoption of a then[-]existing
unsigned paper.’” (quoting 4 Williston
on Contracts § 582 (3rd ed. 1961))); Hereford v. Tilson, 145
Tex. 600, 605, 200 S.W.2d 985, 988 (1947) (“We are definitely
committed to the proposition that the essential elements of such a contract [for
the sale of real estate] may never be supplied by parol evidence.”). 

            In support of his argument that the
writings satisfy the statute of frauds, Ganim relies solely on the cases of Adams
v. Abbott, 151 Tex. 601, 254 S.W.2d 78 (1952) and Jones v. Smith,
231 S.W.2d 1003 (Tex. Civ. App.—Austin 1950, writ ref’d n.r.e.).  These cases
refer to a narrow exception, inapplicable in this case, that permits the
identification of property in a written memorandum to be clarified using extrinsic
evidence.  As the Texas Supreme Court explained the exception, “where the land
referred to in the writing is all the land the party to be charged owns in a
given locality, it is sufficient to describe it in such general terms as ‘a
certain tract of land, being my own headright, lying on Rush Creek, in the
cross timbers . . . .’”  Hereford, 145 Tex. at 605, 200
S.W.2d at 988 (quoting Fulton v. Robinson, 55 Tex. 401 (1881)); accord,
Pickett v. Bishop, 148 Tex. 207, 210, 223 S.W.2d 222, 223 (1949).  This
exception applied in Adams, in which a property owner asked a resident
of Collin County, Texas “to assist her ‘in the sale of my little farm out there,’”
and extrinsic evidence demonstrated that she “owned no land in Texas other than
the Collin County farm.”  Adams, 151 Tex. at 603–04, 254 S.W.2d at 79. 
The rule also applied in Jones, in which a seller gave a broker written
authorization “to sell ‘my ranch of 2200 acres,’ and testified that he did not
own any ranch anywhere in Texas or elsewhere other than the 2200 acres”
described in the listing contract.  Jones, 231 S.W.2d at 1004.  These
cases have no application here.  It has never been contended that any document
signed by or on behalf of Alattar, or incorporated by reference into such a
signed document, expresses Alattar’s intent to convey to the partnership the
only real property he owns of a particular size or in a particular location.

            In sum, the six documents on which Ganim
relied at trial do not constitute a signed, written memorandum setting forth
the essential terms of the agreement Ganim alleged.  See Flameout Design
& Fabrication, Inc. v. Pennzoil Caspian Corp., 994 S.W.2d 830, 835
(Tex. App.—Houston [1st Dist.] 1999, no pet.) (holding that, taken together, a
letter of intent, a listing of materials and prices, and an unsigned cover
letter do not satisfy the statute of frauds).  Because the agreement the jury
found to exist does not comply with the statute of frauds, it is unenforceable.[8]


 

IV.  Conclusion

 

            Because the claim on which the trial
court rendered judgment is barred by the statute of frauds, we sustain
Alattar’s first issue,[9] reverse the
trial court’s judgment, and render judgment that appellee Ganim take nothing.

                                                                                    

                                                                        /s/        Adele
Hedges

                                                                                    Chief
Justice

 

 

Panel
consists of Chief Justice Hedges and Justices Anderson and Boyce.









[1] At trial, the documents were identified as Plaintiff’s
Exhibits 37, 18, 26, 19, 33, and 43.  For clarity, we refer to the documents by
name, and in chronological order.  





[2] The jury also found that (a) there was a relationship
of trust and confidence between Ganim and Alattar, (b) Alattar failed to
comply with a fiduciary duty to Ganim, (c) Alattar committed fraud against
Ganim, and (d) Ganim foreseeably and substantially relied to his detriment
on Alattar’s promise; however, the jury did not find that Ganim sustained any
damages as a result of this conduct.  In addition, the unanimous jury found by
clear and convincing evidence that the harm to Ganim resulted from malice or
fraud, but chose to award no exemplary damages. 





[3] Ganim does not challenge the trial court’s failure to
include in the damage award the $1,500.00 the jury concluded that he expended
in reliance on the six-document agreement.





[4] In his second issue, Alattar argues that the purported
agreement is insufficiently definite to be enforceable because the writings
contain materially conflicting terms.  He asserts in his third issue that no
evidence supports the jury’s damage award, and in his fourth issue, he contends
the trial court erred in failing to require Ganim to identify in his pleadings
the maximum amount of damages sought.  He argues in his fifth issue that the
trial court erred in its selection of testimony that, in response to a jury
question, it allowed the jury to rehear.





[5] We further note that in his live pleadings, Ganim
requested specific performance.





[6] In characterizing the issue as actually
submitted, Ganim states, “The jury considered six documents to determine whether
an agreement existed between Alattar and Ganim for Alattar to acquire the
3,800 acres for the parties’ partnership.” (emphasis added).  The phrase “to
acquire the 3,800 acres” is simply another way of saying, “to purchase the real
estate.”





[7] “Under Texas law, a writing that contemplates a
contract or promise to be made in the future does not satisfy the requirements
of the statute of frauds.”  Hartford Fire Ins. Co. v. C. Springs 300, Ltd.,
287 S.W.3d 771, 778 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).  “Writings
that contain ‘futuristic’ language are insufficient to confirm that a contract
or promise is already in existence.”  Id.; Martco, Inc. v. Doran
Chevrolet, Inc., 632 S.W.2d 927, 928–29 (Tex. App.—Dallas 1982, no writ)
(same).





[8] Alattar alternatively relies on a similar, but more
stringent provision in the Texas Trust Code.  The Trust Code analog to the statute of frauds applies
only to an express trust and not to a resulting trust, a constructive trust, a
business trust, or a security instrument.  Tex. Prop. Code Ann. § 111.003 (Vernon 2007).  This section provides that “[a] trust in
[real property] is enforceable only if there is written evidence of the trust’s
terms bearing the signature of the settlor or the settlor’s authorized agent.” 
It is not necessary to determine whether the more rigorous Texas Trust Code
provision also applies, because even if it does, then that statute’s
requirements also are unmet.  Ganim offered no written evidence of the terms of
a trust to which the Alattar-Ganim partnership was a beneficiary. 





[9] Because Alattar’s first issue is dispositive, we do
not reach his remaining issues.