# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 1, 2012

No. 10-20599

Lyle W. Cayce
Clerk

PRESTON EXPLORATION COMPANY, L.P.; PEC PARTNERSHIP; T.S.C.
OIL & GAS, INC.; AND FRANK WILLIS, III,

Plaintiffs - Appellants

v.

GSF, L.L.C. AND CHESAPEAKE ENERGY CORPORATION,

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before BENAVIDES, and PRADO, Circuit Judges, and ALVAREZ, District
Judge.

MICAELA ALVAREZ, District Judge[*]:

## I.   BACKGROUND

Plaintiffs/Appellants Preston Exploration Company, L.P.; PEC
Partnership; T.S.C. Oil & Gas, Inc.; and Frank Willis, III (collectively "Preston")
appeal the district court's entry of judgment in favor of Defendants/Appellees
GSF, L.L.C. and Chesapeake Energy Corporation (collectively "Chesapeake") on
Chesapeake's statute of frauds defense to Preston's lawsuit demanding specific
performance of three Purchase and Sale Agreements ("PSAs") entered between

---

[*] District Judge of the Southern District of Texas, sitting by designation.

the parties for the sale/purchase of certain oil and gas leases. Following a bench trial, the trial court granted judgment on the statute of frauds issue in favor of Chesapeake, determining that the PSAs did not comply with the statute of frauds as neither the PSAs, nor the exhibits attached to the PSAs, furnished the means or data by which to identify the leases to be conveyed with reasonable certainty. Preston appeals the judgment granted in Chesapeake's favor. For the reasons set forth below, we **VACATE** the judgment of the trial court and **REMAND** to the district court.

### A.    Factual Background

In June 2008, Preston and Chesapeake began discussions regarding the sale/purchase of certain oil and gas leases owned by Preston. In time, the parties agreed to pursue a transaction and entered into a letter of intent with a closing date of August 20, 2008. This closing date was later pushed back by a month to September 19th, then to September 26th and again to October 7th. By early October, for various reasons, the parties were not yet ready to proceed to closing. In an effort to move forward with the transaction, the parties agreed to enter into purchase and sale agreements.

The dispute herein arises in connection with the documents attached to the PSAs. The PSAs were executed on October 7 and 8, 2008.[1] Prior to signing the PSAs, the parties exchanged drafts of the PSAs along with drafts of the exhibits attached to the PSAs. The exhibits were specifically referenced in the PSAs, including a reference to one of the exhibits as the document describing the oil & gas leases to be conveyed and a reference to a different exhibit as the document setting out the form of the assignments to be delivered at closing.

The drafts of the PSAs, including the attached exhibits, were exchanged by e-mail between Preston and Chesapeake in the days immediately preceding

---

[1]    Ultimately, three PSAs were executed between the parties. The PSAs are substantially identical except that each pertains to a distinct Preston entity.

2

the actual execution of the documents. During this time, Chesapeake specifically requested to review the final schedules and exhibits. After some back and forth, Preston executed the PSAs on October 7th. On the following day, Chesapeake executed the PSAs without any complaints regarding the attached exhibits. The PSAs now provided for a November 7th closing date. The PSAs also provided for payment of a non-refundable deposit of 10% of the unadjusted purchase price. The deposit amounted to $11,000,000.00.

Following execution of the PSAs, the parties moved towards closing. Chesapeake continued performing its due diligence examination of the title to the leases to be conveyed. However, on November 6, 2008, upon inquiry by Preston, Chesapeake confirmed that it would not close. This suit followed.

## B.     Procedural Background

Soon after answering Preston's complaint, Chesapeake filed its motion for summary judgment asserting that enforcement of the PSAs was barred by the statute of frauds. Preston thereafter filed its own motion for summary judgment on its claim for specific performance and on Chesapeake's counterclaim to recover its down payment.

The trial court initially granted Chesapeake's motion and thus denied relief on Preston's claim for specific performance. At that time the trial court also denied Preston's motion for summary judgment as to Chesapeake's counterclaim. Preston thereafter moved to alter or amend the judgment which motion was granted by the trial court on the issue of whether certain exhibits were finalized at the time the PSAs were executed. A three day bench trial followed with each side presenting evidence pertaining, in part, to such issue. In connection with the bench trial, and in the subsequent briefs, the trial court permitted the parties to revisit issues and legal arguments whether earlier determined or not previously presented.

Following the bench trial, the trial court issued findings of fact and conclusions of law. Of significance to the issues presented in this appeal, the

trial court determined that the exhibits referenced as Exhibit A and attached to the PSAs did not contain sufficient information to be statute of frauds compliant. The trial court also determined, as a factual matter, that the exhibits referenced as the Assignment Exhibits were not finalized at the time the PSAs were executed; thus, the trial court determined that those exhibits could not be incorporated into the PSAs. Based upon these findings, the trial court determined that the PSAs did not comply with the statute of frauds and were not enforceable as neither the PSAs, nor the attached exhibits, furnished the means or data by which to identify the leases to be conveyed with reasonable certainty. The trial court also held that Chesapeake was not entitled to return of the $11,000,000.00 paid to Preston as a down payment on the transaction. Chesapeake did not cross-appeal this issue.

Preston then filed a motion for amended findings and judgment, and in the alternative, for new trial, as well as a motion to alter judgment. Such motions were denied by the trial court. Final judgment was entered on June 18, 2010 and this appeal followed.

## C.    PSA Relevant Terms

The terms of the PSAs as a whole are not in dispute. Thus, only those terms pertinent to the statute of frauds issue are referenced herein.

Section 1(a)(i) of each of the PSAs describes the properties to be conveyed as "[a]ll of Seller's right, title and interest in and to all oil and gas leases. . . [as] defined in Exhibit 'A' attached and made a part hereof. . . ." Exhibit A to the PSAs is a listing of the leases to be conveyed. That exhibit includes a county reference in the overall heading and ten columns with the following headings: lease Id, Lease Name, Lessee, eff. date, gross acres, net acres, royalty, ORRI, NRI to be conveyed, and value of net.

Section 2 of the PSA sets out the purchase price with a provision for a 10% nonrefundable deposit.

Section 3, entitled <u>Effective Date and Closing</u> provides that the conveyance of the properties shall be effective as of September 26, 2008 and "title thereto shall be delivered at the Closing which shall take place on November 7, 2008 . . . ."

Section 8(b)(i) provides that at closing Seller shall deliver an "Assignment executed and acknowledged by Seller . . . the form of which is attached hereto as Exhibit 'C' (the Assignment form)."

Section 12(b) provides that "[t]his agreement together with the Exhibits attached hereto and the Assignment and other documents to be delivered pursuant to the terms hereof, shall constitute the complete agreement between the parties . . . ."  Section 12(q)(vii) provides that "[t]he Schedules and Exhibits listed in the List of Schedules and Exhibits are attached hereto.  Each such Schedule and/or Exhibit is incorporated herein by reference for all purposes, and reference to this Agreement shall also include such Schedule and/or Exhibit unless the context in which used shall otherwise require."

Also included was a provision for post closing adjustment of the purchase (Section 10); a provision for curing any title defects pertaining to any particular lease (Section 6); and a provision obligating Seller to make available to Buyer all of its "title files" (Section 6(b)).

## II.   DISCUSSION

### A.   Standard of Review and Applicable Law

"The standard of review for a bench trial is well established: findings of fact are reviewed for clear error and legal issues are reviewed de novo." *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 601 (5th Cir. 2000).  As the case was brought to the district court on diversity jurisdiction, the substantive law of Texas applies.  *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78-79 (1938).

### B.   Texas Statute of Frauds

The Texas Statute of Frauds provides that a contract for the sale of real estate is not enforceable unless it is in writing signed by the person to be charged.  TEX. BUS. & COM. CODE ANN. § 26.01 (West 2009).  The statute of

frauds applies to any transfer of an interest in land, including oil and gas leases. *Minchen v. Fields*, 345 S.W.2d 282, 287–88 (Tex. 1961). Further, to be valid, the writing must contain a sufficient description of the property to be conveyed. *Pick v. Bartel*, 659 S.W.2d 636, 637 (Tex. 1983). A property description is sufficient if the writing furnishes within itself, or by reference to some other existing writing, the means or data by which the particular land to be conveyed may be identified with reasonable certainty. *Wilson v. Fisher*, 188 S.W.2d 150, 152 (Tex. 1945). Only in limited circumstances may extrinsic evidence be used and then "only for the purpose of identifying the [property] with reasonable certainty from the data in the [writing]." *Pick v. Bartel*, 659 S.W.2d at 637 (quoting *Wilson*, 188 S.W.2d at 152). "The written memorandum, however, need not be contained in one document." *Padilla v. LaFrance,* 907 S.W.2d 454, 460 (Tex. 1995) (citing *Adams v. Abbott*, 254 S.W.2d 78, 80 (Tex. 1952)).

## C.    The Contract

The contracts between the parties are the three PSAs entered into on October 7th and 8th. In determining that the conveyance at issue here did not comply with the statute of frauds, the trial court found that the PSAs standing alone (*i.e.* considered without the related incorporated documents) did not contain a  description of the property to be conveyed. This issue is not disputed. However, the PSAs do contain some indication of what is to be conveyed. The PSAs specifically provide that Preston is to convey  "[a]ll of Seller's right, title and interest in and to all oil and gas leases" as defined in Exhibit A.

## D.    The Exhibits

As noted above, the PSAs specifically referenced and incorporated various exhibits. Because it is undisputed that certain of those exhibits do provide specific reference to the recording information for each lease, Chesapeake argued that these documents should not be incorporated into the PSAs because the documents were not finalized. The trial court agreed with Chesapeake.

Exhibit C is the assignment form to convey the leases at closing. Exhibit C is specifically referenced in the PSAs and is incorporated into the PSAs by the language of Section 12(q)(vii). Section (a) of Exhibit C provides language that is almost identical to the conveyance language contained in the PSAs. Specifically, Section (a) of Exhibit C provides that the assignment is of "[a]ll of Assignor's right, title and interest . . . [in the] oil and gas leases . . . defined in Exhibit 'A' . . . ." Exhibit C has an Assignment Exhibit attached to it as Exhibit A and it is undisputed that this Assignment Exhibit includes recording information for the leases to be conveyed. The dispute arises from Chesapeake's contention that it did not consider this document to be part of the PSAs because it was not yet final. However, the assignment documents could not be final at the signing of the PSAs because it was clearly intended by the parties that title work remained to be completed. The PSAs specifically include provisions for curing title defects and for adjusting the contract price for any title defects which could not be cured. It is undisputed that title work continued to be done by Chesapeake even after the execution of the contract as the PSAs also included a title work completion date of October 14th in Section 6(c). Therefore, the trial court's factual finding that the assignment documents were not yet final is not disturbed.

However, the PSAs clearly reflect the intention of the parties and a recognition that there was still some title work to be done before a final determination could be made as to the leases which would ultimately be conveyed. Thus, the trial court misconstrued this lack of finality as to the assignment documents as evidence that there was no meeting of the minds as to the subject of the contract. As a result, the trial court determined that the exhibits could not be construed as part of the contract. Such analysis reflects the conflating of two distinct principles - whether parties come to a meeting of the minds as to the subject matter of a contract with whether a writing's legal description is sufficient to meet the statute of frauds. The trial court relied on

No. 10- 20599

certain discrepancies between the exhibits attached to the PSAs to determine that there was no meeting of the minds as to the properties to be conveyed. While discrepancies certainly exist between the exhibits, the PSAs themselves clearly reflect the essential terms of the contract - to convey certain leases for a particular price by a certain date. If in fact there was no meeting of the minds, there would be no contract whatsoever and the statute of frauds issue would be moot.

The Texas Supreme Court has repeatedly held that multiple writings pertaining to the same transaction will be construed as one contract. *Owen v. Hendricks,* 433 S.W.2d 164 (Tex. 1968); *see also Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000) (where the court finds that two ordinances and other related documents are part of a single settlement agreement)*; DeWitt Cnty. Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 102 (Tex. 1999) (where the court considers a service agreement, a tariff, and an easement agreement together to determine the intent of the contracting parties); *City of Houston v. Williams*, No. 09–0770, 2011 WL 923980 at *6 (Tex. March 18, 2011) (where the court construes multiple city ordinances as a unilateral employment contract between a city and firefighters). Furthermore, "[i]t is uniformly held that an unsigned paper may be incorporated by reference in the paper signed by the person sought to be charged." *Owen,* 433 S.W.2d at 166. Additionally, "[o]ne writing may be connected with another either expressly or by necessary inference because of internal evidence of the subject matter and occasion, that is, that they relate to the same transaction." *Oliver v. Corzelius,* 215 S.W.2d 231, 237 (Tex. Civ. App.– El Paso1948), *rev'd on other grounds,* 220 S.W.2d 632 (Tex. 1949).

Here, it is clear that the intention of the parties was to convey leases that complied with the specifications set forth in the PSAs. The PSAs define the type of leases to be conveyed - those oil and gas leases that had marketable title and that would continue for at least a one year period after the effective date (Section

8

6).    Prior to execution of the PSAs, the parties exchanged the documents pertaining to the transaction, including the attached exhibits, certain of which provide the recording information for the leases.  The attached exhibits are specifically referenced in, and incorporated into, the PSAs.  By the very terms of the PSAs, the parties intended that title work would continue and that certain leases might ultimately be excluded from the contract.  Clearly, the PSAs and the attached exhibits were all part of the same transaction and should be construed together.  See *Endeavor Natural Gas, L.P. v. Magnum Hunter Prod., Inc.*, No. 13-06-352-CV,  2007 WL 4340870 at *4 (Tex. App.–Corpus Christi, Dec. 13, 2007, no pet.) (Assignment and the Letter Agreement should be considered in determining the intent of the parties considering both pertained to the same transaction: the conveyance of the subject wells from one party to another).

It was clearly the intent of the parties that the assignments would not be finalized until such time as the title work was complete.  Thus, the trial court erred in its holding that the lack of finality prevented consideration of the exhibits attached to the PSAs as a part of the contract to convey the property. The exhibits were specifically incorporated into the contract.  The exhibits contain a sufficient legal description to meet the statute of frauds.  Thus, the PSAs are enforceable by specific performance.

To the extent that certain leases are listed on Exhibit A of the PSAs but contain no corresponding recording information on the Assignment Exhibit A that is part of Exhibit C, enforcement is limited to those leases identified by recording information.  *See Westland Oil Dev. Corp. v. Gulf Oil Corp.*,  637 S.W.2d 903, 910 (Tex. 1982) (divisible contract may be enforced despite the failure of part to meet statute of frauds); *Kmiec v. Reagan*, 556 S.W.2d 567 (Tex. 1977) (holding that a covenant to convey that meets the statute of frauds as to certain lands but fails as to others is divisible and capable of being enforceable in part and invalid in part).  Therefore, this Court holds that Preston may obtain

9

specific performance of those leases listed in Assignment Exhibit A of Exhibit C which include recording information.

### III.　CONCLUSION

Accordingly, the district court's judgment in favor of Chesapeake is **VACATED** and the case is **REMANDED** for proceedings consistent with this opinion.